785 So.2d 1088 (2001)
Charlie GAVIN a/k/a Charlie W. Gavin, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-01934-COA.
Court of Appeals of Mississippi.
May 8, 2001.
*1090 Johnnie E. Walls, Jr., Greenville, Attorney for Appellant.
Office of the Attorney General by Billy L. Gore, Attorney for Appellant.
Before SOUTHWICK, P.J., CHANDLER, and MYERS, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. Charlie Gavin was convicted after a jury trial on three counts of being a felon in possession of firearms and a fourth of possessing a dangerous weapon. On appeal, Gavin argues that the evidence was insufficient, that the court erred in admitting a hearsay statement, and that his change of venue motion should have been granted. We agree that improper hearsay was admitted on one charge and that there was insufficient evidence to demonstrate constructive possession of the remainder. *1091 We therefore reverse all convictions but remand only the one based on improper hearsay.

FACTS
¶ 2. Law enforcement officials entered into an agreement with Perry Horton. Horton would buy crack cocaine from his source in exchange for the State's dropping forgery charges. He was also given money to relocate. On June 5, 1998, Horton entered Gavin's Quick Stop to purchase the drugs from the defendant, Charlie Gavin. The store was owned by the defendant's brother, L.C. Gavin. The exchange was recorded on a body transmitter and recording device worn by Horton.
¶ 3. After the exchange, Horton began to exit the store. Gavin asked Horton to stop as he wanted to search Horton. A struggle ensued. The wires from the recording device were discovered, but before they were ripped off, Horton gave a distress signal to the law enforcement officers surrounding the store. The officers immediately arrived and found Horton on the floor with Gavin on top of him.
¶ 4. Also present was store employee Linda Salley. She was detained, then given permission to leave without being arrested. She told Officer Pigues that she wished to "get some bags out of the store" before it was locked by the officers. Pigues searched her purse for safety reasons and discovered a .9mm handgun. Once the gun was pulled from the purse, Salley stated that the handgun did not belong to her but belonged to the defendant.
¶ 5. The store was searched after the officers secured a search warrant. Two additional guns were found in a file cabinet behind the counter and a machete was found under a sink.
¶ 6. In addition to drug charges, Gavin was charged with three counts of a felon in possession of firearms and one count of a felon in possession of a dangerous weapon. After a jury trial, he was found guilty on all counts. He was sentenced as a habitual offender to consecutive life sentences.

DISCUSSION

1. Hearsay Exception
¶ 7. Gavin argues that the trial court erred in admitting hearsay statements allegedly made by Salley to Agent Pigues. During the trial, Agent Pigues testified, over defense objection, that when he discovered the .9mm handgun in Salley's purse, she stated that the gun belonged to the defendant. The statement appears to be hearsay since it was a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E. 801(c). Salley's statement was offered to prove that the .9mm belonged to Gavin.
¶ 8. Notwithstanding this definition, the State argues that the statement is not hearsay because the defendant overheard it and did not object to its accuracy. This is the rule the State invokes:
A statement is not hearsay if:
. . .
(2) Admission by Party Opponent. The statement is offered against a party and is
. . .
(B) a statement of which he has manifested his adoption or belief in its truth, ...
M.R.E. 801(d)(2)(B). The State contends that because the statement was made in the presence of Gavin and he did not deny or object to Salley's statement, it is admissible under this rule. We examine that contention factually before analyzing the legal principle.
*1092 ¶ 9. When Agent Pigues began to testify as to what Salley said after he found the weapon, the defense objected. The trial court then stated that the prosecution must lay a predicate for the statement. Agent Pigues was then questioned as to the location of the defendant in relation to Salley and the agent. He testified that Gavin, who was in custody at the time of the statement, was standing two feet away. The court then allowed the statement. However, the prosecution never asked the witness whether or how Gavin reacted to the statement that the gun belonged to him. A rule that requires that the accused have "manifested his adoption or belief in its truth" is unusable unless some evidence to support this manifestation is presented. All we know is that Gavin was close to the declarant when the statement was made. Whether he stood mutely, objected vociferously, or did something between those extremes is unknown. The trial judge erred in admitting the statement. We note also that since Gavin was in custody and may have been aware of his right to remain silent and the risk of not doing so even if he had not yet formally been warned, this hearsay exception is of uncertain relevance. That issue can be addressed if this evidence is reconsidered on remand.
¶ 10. Having determined that the statement was inadmissible, we next examine whether the error compels reversal. Reversal is not required if the admission of the hearsay testimony was harmless beyond a reasonable doubt. Mack v. State, 650 So.2d 1289, 1310 (Miss.1994). In applying the harmless error standard, "this Court must determine whether the weight of the evidence against [the defendant] is sufficient to outweigh the harm done by allowing admission of [improper] evidence." Fuselier v. State, 702 So.2d 388, 391 (Miss.1997).
¶ 11. Here, the other evidence regarding the .9mm weapon included Horton's testimony that Gavin placed that weapon on the counter when Gavin stopped him from exiting the store. Horton's credibility was attacked by the defense on the basis that Horton arranged the exchange of drugs in return for the charges against Horton being dropped. The defense also pointed out that there was no evidence in the transcript of the conversation transmitted through the body wire and tape indicating that a weapon had been placed on the counter. Additionally, Salley denied making any statements concerning the weapon to the agent.
¶ 12. There was also testimony from a witness, Rod Stinson, who had worked at a different business owned by Gavin's brother. Stinson was allowed to testify in rebuttal to impeach Gavin, since the defendant testified that he never possessed that weapon, not on the day of the crime and not at other times. Stinson was allowed to testify that he had seen Charlie Gavin with the .9mm weapon at the other business, and had handed it to Stinson there. He also had previously seen him remove the gun from the filing cabinet at the store where it was found on the day of Gavin's arrest, at least while Gavin was looking for something else in the cabinet. At another time when "some strange guys pulled up," Gavin placed the .9mm in his pants and pulled his shirt over it.
¶ 13. As impeachment, this testimony by Stinson can only undermine Gavin's credibility. It is not affirmative evidence of possession on the day in question. Gavin was not indicted for possessing the weapon on any day except the one stated in the indictment, the day of his arrest for selling crack cocaine. In cataloguing the usable evidence, we note again that the hearsay statement by officer Pigues was improperly admitted. However, the informant *1093 making the drug purchase, Horton, testified that Gavin had the gun. There was an effort to impeach his testimony by showing the benefits to Horton of participating in the transaction. Both the employee Salley and the defendant Gavin testified that he did not possess the .9mm.
¶ 14. The issue was strongly contested. The inadmissible hearsay was quite powerful evidence. We cannot find that the jurors were unaffected by it in this closely divided factual issue. We reverse and remand for further proceedings on the issue of the possession of the .9mm handgun.

2. Sufficiency of evidence of possession of other weapons
¶ 15. Gavin argues that the evidence of possession of the various other weapons was insufficient to sustain his conviction. A reviewing court must accept all the evidence and reasonable inferences in the light most favorable to the verdict. Holloman v. State, 656 So.2d 1134, 1142 (Miss.1995). With that view in mind, then we must determine whether evidence on any element of the charge is lacking. Id. Only if a reasonable juror had to reach a verdict of not guilty will we reverse. Id.
¶ 16. As there is no evidence that the defendant had actual possession of any of the weapons, the State was proceeding under the theory of constructive possession. For that, "there must be sufficient facts to warrant a finding that [the] defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it." Curry v. State, 249 So.2d 414, 416 (Miss.1971). "Constructive possession may be shown by establishing that the [item] involved was subject to his dominion or control." Id. Proximity is usually an essential element, but by itself is not enough in the absence of other incriminating circumstances. Id.
¶ 17. The owner of the premises where the contraband is found is rebuttably presumed to be in possession of the contraband. Hamburg v. State, 248 So.2d 430 (Miss.1971). Charlie Gavin was not the owner. Thus, in cases where the defendant is not the owner of the premises or in exclusive possession, then the State must prove some "competent evidence connecting him with the contraband." Powell v. State, 355 So.2d 1378, 1379 (Miss.1978).
¶ 18. In one case, a conviction was reversed and rendered for possession of crack cocaine where the State provided insufficient evidence that the accused possessed contraband. He was not the owner of the car in which the drugs were found, though he had been using the vehicle for fifteen hours. Ferrell v. State, 649 So.2d 831, 834 (Miss.1995). The drugs were in a matchbox quite close to the driver, but the box was "not positioned in such a way that its presence would be reasonably apparent to a person riding in the car." Id. at 835. Ferrell's control over the car needed to be joined by "additional incriminating circumstances in order to prove constructive possession." Id. Among the possible circumstances were drug paraphernalia in the car, the accused's having drugs in his system, or his fingerprints being found on the matchbox. Id. None of that applied.
¶ 19. The first possession count concerned the .9mm found in Salley's purse after the store had been secured. We have already reversed that conviction and that judgment is remanded. We now review the evidence on the other three weapons.
¶ 20. Brown-handled .38 caliber handgun. This weapon was found in a filing cabinet. The only evidence that Gavin had knowledge of that weapon was from the witness Stinton, who testified that on a previous occasion he had seen *1094 Gavin remove the weapon from the filing cabinet. That testimony proved actual possession on the previous day of Stinton's observation, which indicates Gavin's knowledge of the weapon. An inference was likely permissible that he would be willing to handle it on other occasions. However, the State must gain an inference from this evidence not only "of the presence and character of the particular" weapon, but that Gavin "was intentionally and consciously in possession of it" on the day charged. Curry v. State, 249 So.2d 414, 416 (Miss.1971).
¶ 21. The Supreme Court in reliance on Curry found that a defendant's presence in a vehicle in which contraband drugs are located, even when he handled the drugs briefly as someone else gave them to him to hide in the glove compartment, did not support an inference of dominion and control. Berry v. State, 652 So.2d 745, 748 (Miss.1995). We find the same defect here. There was evidence that Gavin handled the gun at an earlier time. We can infer that he continued to know of its existence. But there is no other connection by Gavin with this weapon. Being in a closed area such as a vehicle or a room with contraband does not by itself permit the inference of dominion and control. If the accused is the owner of the premises, or if he is the exclusive user for some extended period of time, or if there are additional incriminating circumstances, then the inferences might be permissible. None of that is present here.
¶ 22. We find insufficient evidence to support conviction of this count and reverse and render.
¶ 23. Second .38 caliber handgun and machete. As for these weapons, there is no evidence that Gavin even had knowledge of their existence. The only evidence concerning the weapons is that they were found in the store on the day Gavin was arrested. Gavin's mother testified that the machete belonged to her. She had used it as some sort of farming tool. No additional testimony was offered as to the second.38 caliber handgun. No one testified that Gavin had ever handled, mentioned, or otherwise dealt with those weapons.
¶ 24. On review, all reasonable inferences are given in the light most favorably to the verdict. Johnson v. State, 642 So.2d 924, 928 (Miss.1994). Here, the State presents a theory something like the following. Gavin operates a drug business out of this store. In order to protect himself he has weapons placed in various locations. The theory may be correct, but there was not any additional incriminating evidence beyond his presence in the room to support constructive possession of two of the weapons. On the final one, the fact that he had once handled it does not permit an inference of dominion and control on the day covered by the indictment.
¶ 25. Therefore, we find the evidence insufficient to support the conviction on these two counts and reverse and render.

3. Change of venue
¶ 26. Gavin also argues that he was entitled to a change of venue. A denial of change of venue is reviewed for abuse of discretion. Lutes v. State, 517 So.2d 541, 545 (Miss.1987). Gavin argues that the jury pool was tainted by an article about him that appeared sometime before the trial began. However, during voir dire, only one or two potential jurors possibly read that or an earlier article. Of the seven potential jurors who had heard about the case, only one stated that he had formed an opinion and could not be fair and impartial. He was struck by the court for cause. All others stated that they could be fair. Only one of those was selected for the jury. She was placed on the *1095 jury without an objection by either the State or defense.
¶ 27. In cases where there has been pretrial publicity, the trial judge looks at two factors when evaluating the request for change of venue. Holland v. State, 705 So.2d 307, 336 (Miss.1997). "First is the level of adverse publicity, both in extent of coverage and its inflammatory nature. Second is the extent of the effect the publicity had upon the venire persons in the case." Id. Gavin presented only one article that discussed him negatively. Gavin's counsel failed to question the potential jurors about it. When the judge denied the motion for a change in venue, he noted that the defense did not question the jurors on this particular article. There was no abuse of discretion in the denial of a change of venue.

CONCLUSION
¶ 28. We reverse and remand the judgment for further proceedings on Count I regarding the .9mm handgun for which the improper hearsay was admitted. Whether that means a new trial or other action is initially in the discretion of the prosecutor. We are not holding that if a proper predicate for the hearsay evidence is shown in a new trial, that the hearsay is still nonetheless inadmissible. We only hold that the predicate was not shown here. There was sufficient evidence to show possession, namely the drug buyer Horton's testimony, but the admission of the hearsay requires us to reverse for additional proceedings. Since this conviction was based in part on improper evidence, we should remand and not render. Tapp v. State, 347 So.2d 974, 977 (Miss. 1977). Even when the only evidence on an issue has been declared inadmissible, the proper procedure is to remand. An early and clear statement of this principle was by Chief Justice Sydney M. Smith:
The record simply presents a case wherein a fact necessary to support the judgment rendered was proven or made to appear by incompetent evidence, and in such a case the Supreme Court on appeal thereto should not decide the case as if no evidence of the fact had been introduced, but should remand the case for a new trial so that the fact may be made to appear by competent evidence. This, in so far as we are aware, is the universal rule....
Witherspoon v. State, ex rel. West, 138 Miss. 310, 103 So. 134, 139 (1925).
¶ 29. As to Counts II, III, and IV involving the two .38 caliber revolvers and the machete, there was insufficient evidence presented. The State is not entitled to a second opportunity to present an adequate case. We reverse and order Gavin discharged from further jeopardy on those three possession offenses.
¶ 30. THE JUDGMENT OF THE GRENADA COUNTY CIRCUIT COURT OF CONVICTION ON COUNT I FOR POSSESSION OF A FIREARM BY A FELON, HABITUAL OFFENDER AND SENTENCE OF LIFE IMPRISONMENT IS REVERSED AND THE CAUSE IS REMANDED FOR FURTHER PROCEEDINGS. THE JUDGMENT OF THE GRENADA COUNTY CIRCUIT COURT OF CONVICTION ON COUNT II FOR POSSESSION OF A FIREARM BY A FELON, HABITUAL OFFENDER, ON COUNT III FOR POSSESSION OF A FIREARM BY A FELON, HABITUAL OFFENDER, AND ON COUNT IV FOR POSSESSION OF A DEADLY WEAPON, AND SENTENCES OF LIFE IMPRISONMENT ON EACH COUNT, ARE REVERSED AND CHARLIE W. GAVIN IS ORDERED DISCHARGED FROM FURTHER JEOPARDY ON COUNTS II, III AND IV. COSTS OF THIS APPEAL *1096 ARE ASSESSED TO GRENADA COUNTY.
McMILLIN, C.J., KING, P.J., PAYNE, BRIDGES, THOMAS, LEE, IRVING, MYERS and CHANDLER, JJ., CONCUR.