IRVING, P.J.,
for the Court:
¶1. A Leake County jury convicted Brandon P. Smith of possession of a firearm by. a convicted felon. The Leake County. Circuit Court .sentenced Smith to serve ten years,, as a habitual offender, in the custody of the Mississippi Department *772 of Corrections (MDOC), with the sentence to run consecutively to the sentence Smith was already serving. Feeling aggrieved, Smith filed this appeal, alleging that the circuit court erred in (1) denying his motion for a directed verdict, (2) refusing his request for a peremptory instruction, and (3) denying his motion for a new trial.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. On February 21, 2012, Joe Handy Helton was notified by an employee that someone had broken into the building where he operated a business and had stolen some cash and terminated the electricity to the building by cutting electrical wires. Helton notified the Leake County Sheriffs Department about the incident. However, Helton later discovered that the passenger-side window had been broken out of one his pickup trucks that was located on the property where the building was located. His twelve-gauge shotgun, which was on the truck’s passenger seat, had been stolen also. When Helton discovered that the weapon was missing, he reported the broken window and stolen shotgun to the sheriffs department. Following that report, Smith became a suspect due to his involvement in the sale of a shotgun. On July 3, 2012, a Leake County grand jury indicted Smith, as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev.2015), for one count of business burglary, one count of burglary of a motor vehicle, and one count of possession of a firearm by a convicted felon.
¶ 4. At Smith’s trial, Helton testified that the passenger-side window of his pickup truck had been broken and that his shotgun was missing. In addition, Helton identified the weapon admitted into evidence at trial as being the shotgun that was stolen from his truck.
¶ 5. Shawn Bell, Smith’s friend, testified that Smith had contacted him and asked him to see if anyone wanted to purchase a twelve-gauge shotgun. According to Bell, LaWilliam Holmes told him that he was interested, and Bell relayed that information to Smith. Bell stated that Smith picked him up in Smith’s car, and they went to Gary McCraney’s house, where Smith lived, to pick up the gun. Bell testified that although he did not see Smith get the gun from McCraney’s house, he saw Smith with the gun when Smith returned to the car and placed the gun on the front seat. They then headed to Holmes’s house, where Holmes was outside waiting for them. According to Bell, he and Smith got out of the car, Smith handed Holmes the gun in return for a payment of sixty dollars, and Smith and Bell left. Bell identified the gun that was introduced into evidence as being the one that he saw Smith sell to Holmes.
¶ 6. At Smith’s trial, Holmes did not recall Bell calling him to inquire about whether he wanted to purchase a gun. Holmes confirmed that he bought a gun, but he testified that he gave the money for the gun to Bell. According to Holmes, Bell took the money back to the car where Smith was located. Holmes stated that he saw Smith hand the gun to Bell, and Bell brought the gun to Holmes. Holmes testified that a few days later a deputy came to his house and told him that the gun was stolen, so Holmes turned it in to the sheriffs department. When Holmes was asked about his previous written statement that it was Smith who had handed him the gun, he stated that his statement was erroneous. Holmes also identified the shotgun at trial as the one that he had purchased.
¶7. McCraney testified that he and Smith had been friends since grade school and that Smith had stayed “off and on” at his house. McCraney stated that he saw *773 the gun at his house and assumed it was Smith’s gun, since it was not his. More importantly, McCraney testified that Smith told him that Smith had taken the gun from Helton’s building. McCraney also stated that Smith had told him about the damage that Smith had done to the building. McCraney confirmed seeing Smith leave McCraney’s house with the gun. Finally, McCraney identified the gun that was admitted into evidence at trial as being the one that was at his house.
¶8. Smith testified on his own behalf. He admitted that he had been convicted of burglarizing Helton’s building in 2009, but he denied burglarizing Helton’s building in 2012. He also testified that he did not break into the truck, steal the gun, or sell a shotgun to Holmes. Smith further testified that he did not know Holmes and that he did not recall telling McCraney details of the burglary incident.
¶ 9. Following the conclusion of the evidence, the jury acquitted Smith of the business burglary and motor-vehicle burglary but found him guilty of possession of a firearm by a convicted felon. As stated, the circuit court sentenced Smith as a habitual offender to serve ten years in the custody of the MDOC, with this sentence to run consecutively to the sentence that he was already serving. Smith now appeals.
DISCUSSION
¶ 10. Smith argues that the circuit court erred in denying his motion for a directed verdict, refusing his request for a peremptory instruction, and denying his motion for a new trial. In short, Smith challenges the weight and sufficiency of the evidence. A motion for a directed verdict and a request for a peremptory instruction challenge the legal sufficiency of the evidence supporting a conviction. See Jerninghan v. State, 910 So.2d 748, 751 (¶ 6) (Miss.Ct.App.2005). Therefore, we apply the following standard of review:
[A]ll evidence supporting a guilty verdict is accepted as true, and the prosecution must be given the benefit of all reasonable inferences that can be reasonably drawn from the evidence. Additionally, this Court is not at liberty to direct that the defendant be found not guilty unless[,] viewed in the light most favorable to the verdict[,] no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty.
Id. (internal citations omitted).
¶ 11. However, “[a] motion for [a] new trial challenges the weight of the evidence.” Ivy v. State, 949 So.2d 748, 753 (¶ 21) (Miss.2007) (citing Sheffield v. State, 749 So.2d 123, 127 (¶ 16) (Miss.1999)). This Court has stated that
when determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the trial court has abused its discretion in failing to grant a new trial, and the Court finds the verdict is against the overwhelming weight of the evidence so that allowing the verdict to stand would sanction an unconscionable injustice.
Jerninghan, 910 So.2d at 751 (¶ 6). Therefore, we separately address Smith’s arguments concerning the sufficiency and the weight of the evidence.

I. Sufficiency of the Evidence

¶ 12. As stated above, a motion for a directed verdict and a request for a peremptory instruction receive the same standard of review because both issues address the sufficiency of the evidence. Smith argues that the State failed to meet its burden to prove beyond a reasonable doubt that he had “dominion and control” *774 over the shotgun. He cites two cases in support of his argument, Gavin v. State, 785 So.2d 1088 (Miss.Ct.App.2001), and Curry v. State, 249 So.2d 414, 416 (Miss.1971). In Gavin, an informant purchased drugs from Gavin inside of Gavin’s brother’s store. Gavin, 785 So.2d at 1091 (¶ 2). After the exchange, the police invaded the store and conducted a search of a store worker who was present during the exchange. Id. at (¶ 3). The police found a gun in the store worker’s purse, and she informed them that it belonged to Gavin. Id. at (¶.4). The police obtained a search warrant and conducted another search of the store. Id. at (¶ 5). The police found “two additional guns ... in .a filé cabinet behind the counter and a machete ... under a ■ sink.” ' Id. Subsequently, Gavin was indicted for, and convicted of, three counts of possession of firearms by a felon and one count of possessing a dangerous weapon, the machete. Id. at 1090-1091 (¶¶ 1, 6). Gavin appealed, arguing, among other things, that the evidence was insufficient to support his conviction for possession of the firearms and the machete. Id. at 1090 (¶ 1). More specifically, “Gavin argue[d] that the evidence of possession of the various other weapons was insufficient to sustain his conviction.” Id. at 1093 (¶ 15). This Court stated that “[a]s there is no evidence that the defendant had actual possession of any of the weapons, the State was proceeding under the theory of constructive possession.” Id. at (¶ 16). The Court went on to state that
the State presents a theory something like the following[:] Gavin operates a drug business out of this store[, and] [i]n order to protect himselff,] he has weapons placed in various locations. The theory may be correct, but there was not any additional incriminating evidence beyond his presence in the room to. support constructive possession of two of the weapons. On the final one, the fact that he had once handled it does not permit an inference of dominion and control on the day covered by the indictment..
Id. at 1094 (¶ 24). Ultimately, this Court found the evidence insufficient to support Gavin’s convictions. Id. at (¶¶ 22,25).
¶ 13. In Curry, Johnny Lee Curry was arrested, while riding as a passenger in his own automobile, after police officers received tips that he fit the description of a suspect for larceny. Curry, 249 So.2d at 415. Prior to the arrest, one of the arresting officers “saw Curry look at them, say something to the driver, and reach down as if to put something under the seat.” Id. The officers took the car back to headquarters and conducted a search in Curry’s presence. The search revealed “a matchbox containing marijuana under the dashboard and a package of marijuana under the accelerator.’-’ Id. Curry was indicted for and convicted of possession of marijuana. Id. He appealed, raising, among other issues, the sufficiency of the evidence to show that he possessed the marijuana. Id. Our supreme court found that “[t]he evidence was sufficient to support the jury’s finding that Curxy was in possession of the marijuana.” Id. at 416. Although the Curry court noted that there were several facts indicative of Curry’s possession of the marijuana, it pointed to two facts in particular: “The arresting officers saw Curry make a suspicious downward motion after he observed them and saw that they were about to stop him[, ... ] and the testimony of Rosa Lee Moody, a witness for the [SJtate, [whose testimony] was alternately to the effect that [the] defendant told her the marijuana was his or that he owned the car but not thé marijuana.” Id. In finding that the evidence was sufficient to support Curry’s conviction of possession of the marijuana, the supreme court stated:
*775 What constitutes a sufficient external relationship between the defendant and the narcotic property to complete the concept of possession ⅛ a question which is not susceptible of a specific rule. However, there must be sufficient facts to warrant a finding that [the] defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown by establishing that the drug involved was subject to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances. In the' instant case, all of the circumstances and these criteria were sufficient to warrant the jury in finding that [the] appellant was in possession of the marijuana.
Id. (internal citations omitted).
¶ 14. Gavin is easily distinguishable. In Gavin, no witness connected Gavin to two of the firearms and the dangerous weapon, which were found in his brother’s store, and there was no evidence that Gavin operated the store for his brother. Gavin’s presence in the store by itself was insufficient to prove dominion over the guns and machete. If his presence in the store alone was sufficient proximity to prove constructive possession, logically that would be true of every patron of the store. As to the pistol that was found in the store worker’s purse, the only evidence offered to support a finding that it belonged to Gavin was an officer’s testimony that the store worker gave a statement to the police that the gun belonged to Gavin. However, the store worker testified and denied that she had given such a statement to the police.
¶ 15. We are unable to discern how Curry is helpful to Smith. It is sufficient to say that in Curry, on far less definitive evidence than what we have here, our supreme court found “the evidence was sufficient to support the jury’s finding that Curry was in possession of the marijuana.” Curry, 249 So.2d at 416.
¶ 16. Here, McCraney and Bell testified that they saw Smith in actual possession of the shotgun. Admittedly, Holmes and Bell differed in some aspects of their testimonies, but both testified that at some point they saw Smith in possession of the shotgun. Therefore, the State presented credible evidence to show, beyond a reasonable doubt, that Smith had actual possession of the shotgun at issue. A reasonable juror could find beyond a reasonable doubt that Smith was guilty of possession of a.firearm by a convicted felon. This issue is without merit.

II. Weight of the Evidence

¶ 17. . Smith also argues that the circuit court erred in denying his motion for a new trial. However, Smith has done no more than .assign the error because he did not discuss the facts, nor has he attempted to show how the verdict was against the weight of the evidence. Additionally, he has not cited any authority in support of this argument. Rule 28(a)(6) of the Mississippi Rules of Appellate Procedure provides that arguments are required to contain “the contentions of the appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on.” “We have previously stated that ‘failure to cite any authority is a procedural bar, and a reviewing court is under no obligation to consider the assignment.’ ” Body v. State, 147 So.3d 890, 893 (¶ 16) (Miss.Ct.App.2014) (quoting Norwood v. Miss. Dep’t of Emp’t Sec., 105 So.3d 408, 410 (¶ 5) (Miss.Ct.App.2012)). Therefore, this issue is *776 procedurally barred. However, the procedural bar notwithstanding, based on the facts previously discussed, it is clear that this issue is without merit. Therefore, we find no abuse of discretion by the circuit judge in denying Smith’s motion for a new trial. Accordingly, we affirm Smith’s conviction and sentence.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF LEAKE COUNTY OF CONVICTION OF POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE, AS A HABITUAL OFFENDER, OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE SENTENCE TO RUN CONSECUTIVELY TO THE APPELLANT’S CURRENT SENTENCE, WITHOUT THE POSSIBILITY OF PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEAKE COUNTY.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL, FAIR, JAMES AND WILSON, JJ., CONCUR.