# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00124-COA

SHAWN OLIFF LAVANT A/K/A SHAWN LAVANT                    APPELLANT

v.

STATE OF MISSISSIPPI                                               APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 01/11/2018 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: KATY TAYLOR GERBER |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/08/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

EN BANC.

CARLTON, P.J., FOR THE COURT:

¶1.     Shawn Lavant was stopped by police at 3 a.m. for driving with no headlights on. The car Lavant was driving was owned by Dorothy Parnell. Police recovered two pill bottles, containing a total of 186 pills, from the car. The pills were tested and found to contain methamphetamine. After a trial in Harrison County Circuit Court, Second Judicial District, a unanimous jury found Lavant guilty of possession of forty or more dosage units of methamphetamine with the intent to transfer or distribute in violation of Mississippi Code

Annotated section 41-29-139(a)(1) (Rev. 2013). Lavant was sentenced to serve twenty-five years, with the first ten years to be served day-for-day, in the custody of the Mississippi Department of Corrections (MDOC). The trial court denied Lavant's post-trial motions. Lavant appeals, asserting that the trial court erred in doing so because the State failed to prove that he "possessed" the pills recovered from the Parnell vehicle and also failed to prove that there were forty or more dosage units of methamphetamine recovered. Finding no error, we affirm.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2. At about 3:00 in the morning on April 17, 2016, Lavant was stopped by Officer James Cowan with the Biloxi Police Department for driving without his vehicle's headlights on. Lavant was the only person in the vehicle when Officer Cowan stopped him. The record reflects that the vehicle belonged to Dorothy Parnell, but Lavant admitted that he frequently used the vehicle. Officer Cowan testified that as he approached the vehicle, it appeared as though Lavant was putting something behind the passenger's seat. Officer Cowan noticed an open container of beer and asked Lavant if he had been drinking. Lavant admitted to having a few drinks at the casino earlier that day, so Officer Cowan called for a DUI officer. According to Officer Cowan, Lavant asked him if he was calling for backup, and when Officer Cowan told him that he was, Lavant asked if he could drive his vehicle or get out of the vehicle and walk to a nearby gas station so he could use the restroom.

¶3. Officer Cowan denied these requests. He testified that he did not allow Lavant to leave or get out of the vehicle because in his experience it was fairly common for people with

2

illegal contraband in a vehicle to want to distance themselves from the vehicle.

¶4.     Officer Cowan testified that when the DUI officer arrived (Officer Jason Cummings), he approached the vehicle and then stepped back to tell him (Officer Cowan) that it looked like Lavant was stuffing something between the driver's seat and the center console. Officer Cowan admitted that he did not see the stuffing motion, but he was not watching Lavant "every second" because he was also keeping watch over the entire area and had other things to do, including talking on the radio and running Lavant's license. Based on the information he received from Officer Cummings, Officer Cowan obtained Lavant's consent to search the vehicle.

¶5.     During the vehicle search, Officer Cowan testified that he found a clear pill bottle stuffed down between the driver's seat and the center console. That pill bottle did not have a label and contained various multi-colored, multi-shaped pills. He also found another clear pill bottle containing white pills in the center console. Officer Cowan testified that this pill bottle had a prescription label for oxycodone, prescribed to Dorothy Parnell—the registered owner of the vehicle. According to the impound report entered at trial as the State's exhibit D-1, Officer Cowan also found marijuana and male clothing in the vehicle and approximately $1,000 cash inside the glove compartment. The record also reflects that Lavant had $200 in twenty-dollar bills in his wallet.

¶6.     The State's next witness, Officer Cummings, corroborated Officer Cowan's testimony. He testified that when he responded to the scene Lavant was still sitting in the driver's seat of the vehicle. Officer Cummings further testified that as he approached the

3

vehicle he observed that Lavant's body was turned completely sideways, his hands were down, and it looked like he was "fiddling" with something, as if he were trying to put something or remove something from between the driver's seat and the center console. Officer Cummings continued to observe Lavant for a few more seconds, and just as Officer Cowan testified, Officer Cummings told him that it looked like Lavant was trying to stuff something between the driver's seat and the center console.

¶7.    Officer Cummings then explained to Lavant that he was going to conduct a field sobriety test. He testified that the "fiddling movement" he described earlier in his testimony was not associated with Lavant removing his seatbelt. He knew this because it was not until he told Lavant that he was going to conduct the field sobriety test that Lavant removed his seatbelt and exited the vehicle. Officer Cummings determined that Lavant was not impaired and turned Lavant back over to Officer Cowan.  He testified that Officer Cowan searched the vehicle and he saw him recover the unlabeled pill bottle from the area between the driver's seat and the center console—the same area where he saw Lavant "fiddling around" with something as he approached the vehicle when he first arrived on the scene.

¶8.    The State's next witness was Diamonisha Jackson, who testified as an expert in the field of forensic science, specializing in chemical analysis and drug identification. She testified that she analyzed the pills to determine whether they contained any controlled substances. With respect to the various multi-colored, multi-shaped pills, she testified that there were 142 "dosage units," with each "dosage unit" defined as a whole tablet. She sorted these pills based on their color, shape, and imprint, creating sixteen groups.  Jackson

4

explained that she did not test all 142 pills; rather, she examined and tested each type of pill. She testified that the pills appeared to be clandestine (i.e., not manufactured in a pharmaceutical laboratory), and she determined that they contained methamphetamine and ethylone. She further testified that methamphetamine is a Schedule II drug.

¶9. Regarding the white pills, Jackson testified that there were forty-four dosage units, and she tested one of the white pills. She testified that these pills appeared to have been manufactured in a pharmaceutical laboratory, and she determined that they contained Alprazolam (sold under the trade name Xanax, among others) and methamphetamine. These pills did not contain oxycodone, which was the drug indicated on the prescription label. Jackson was asked during cross-examination if the tests she performed could distinguish between a pill that has an illegal substance manufactured into it and a pill with an illegal substance "dusted" on the outside of it. Jackson admitted that it was possible that the forty-four white pills could have been contaminated with methamphetamine by the 142 multi-colored, multi-shaped pills if they had been in the same bag.

¶10. The State's final witness was Investigator Clint Fore, the lead investigator in the case. He testified as an expert in the field of narcotics investigation. Investigator Fore testified that the multi-colored, multi-shaped pills recovered from the vehicle were commonly referred to as ecstasy. He explained that ecstasy is a "generic brand" of what drug users would "like to believe" is primarily methylenedioxymethamphetamine (MDMA), but is often methamphetamine. Investigator Fore testified that it was the second-largest amount of ecstasy that he had seen on one person in his ten years of law enforcement. Based on his

5

training and experience, Investigator Fore testified that a person possessing 186 dosage units of methamphetamine,[1] as in this case, would possess with the intent to sell. He further testified that in this case the presence of multiple bags containing the pills and the large amount of cash recovered from the vehicle and found on Lavant's person also indicate that a person may be selling the drugs. Investigator Fore also opined that based on his experience, people often sell drugs at the casino, and the standard price for one dosage unit of ecstasy was twenty dollars. Additionally, Investigator Fore testified that "A lot of people that [sell drugs] or travel around with [them do not] use their personal vehicles [so] they can use . . . the line, [']It's not my vehicle. It's not my drugs[.']"

¶11. On cross-examination, Investigator Fore was asked why he did not send the pill bottles to the Forensics Lab to be tested for fingerprints. Investigator Fore explained that fingerprints were rarely recovered. In this case, multiple officers had touched the bottles, and if the in-house fingerprint analyst was unable to obtain a latent print of value, he would not send the evidence to the forensics lab. Defense counsel also asked Investigator Fore whether he had the pill bottles tested for DNA. Investigator Fore responded, "No," explaining that DNA testing was not something that was normally done in a drug investigation and was typically reserved for rape cases or similar crimes.

¶12. After the State rested its case-in-chief, defense counsel moved for a directed verdict, arguing that the State had failed to show that Lavant constructively possessed the pills in question and, even if the State had met the possession element of the crime, there was no

---

[1] There were 142 dosage units of the multi-colored, multi-shaped pills, and forty-four white pills.

6

evidence of any intent to sell on Lavant's part. The trial court denied Lavant's motion.

¶13. Lavant then testified in his defense. Lavant testified that he had been gambling at the casino when his friends asked him to make a "cigarette run" to a nearby gas station. He testified that Dorothy Parnell, a family friend, gave him the keys to her vehicle and that shortly after he left the casino parking garage he was stopped by the police for driving with no headlights on. He testified that he had $200 in twenty-dollar bills in his wallet because he played blackjack and bet forty dollars at a time. When defense counsel asked him about Officer Cummings's testimony that he was "fiddling or doing something" between the seat and the console, Lavant said he was not doing anything and that he was already outside of the vehicle when Officer Cummings arrived. According to Lavant, he did not "knowingly possess" or "intend to distribut[e]" the pills that were recovered from the vehicle. On cross-examination, Lavant admitted that he frequently used Parnell's vehicle and had been in the vehicle earlier that day. He testified that he sat in the passenger's seat for thirty to forty-five minutes on the way to the casino.

¶14. The jury returned a unanimous guilty verdict against Lavant for possession of a controlled substance of forty or more dosage units with intent to sell in violation of section 41-29-139(a)(1). The trial court conducted a separate sentencing hearing and determined that Lavant had been previously convicted of felony possession of a controlled substance on June 28, 2013, which subjected Lavant to enhancement up to twice the maximum sentence permitted by statute, pursuant to Mississippi Code Annotated section 41-29-147 (Rev. 2013). The trial court sentenced Lavant to serve twenty-five years, with the first ten years to be

7

served day-for-day, in the custody of the MDOC.[2]

¶15.    Lavant filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a motion for a new trial. The trial court denied the motions.  Lavant appeals.

**DISCUSSION**

## I.        Applicable Criminal Statute

¶16.    Lavant was charged and convicted under section 41-29-139(a)(1), which makes it a crime "for any person knowingly or intentionally . . . [to] possess with intent to sell . . . a controlled substance . . . ."  The jury found that Lavant possessed forty or more dosage units of methamphetamine, a schedule II drug; therefore Mississippi Code Annotated section 41-29-139(f) (Rev. 2013 and Supp. 2014), the trafficking statute, applied.[3]

¶17.    Lavant asserts that the trial court erred in denying his motion for a JNOV because

---

[2] The jury verdict was handed down on January 10, 2018, and Lavant's sentencing order was entered January 11, 2018.

[3] Section 41-29-139(f) provided:

(f) Trafficking. (1) Any person trafficking in controlled substances shall be guilty of a felony and, upon conviction, shall be imprisoned for a term of not less than ten (10) years nor more than forty (40) years and shall be fined not less than Five Thousand Dollars ($5,000.00) nor more than One Million Dollars ($1,000,000.00). The ten-year mandatory sentence shall not be reduced or suspended. The person shall not be eligible for probation or parole, the provisions of Sections 41-29-149, 47-5-139, 47-7-3 and 47-7-33, to the contrary notwithstanding.

    (2) "Trafficking in controlled substances" as used herein means:

        (A) A violation of subsection (a) of this section involving thirty (30) or more grams or forty (40) or more dosage units of a Schedule I or II controlled substance except marijuana . . . .

8

there was insufficient evidence to support his conviction, or alternatively, that the trial court abused its discretion in denying his motion for a new trial because the verdict was against the overwhelming weight of the evidence. Lavant challenges the sufficiency or weight of the evidence on two elements of his conviction: (1) that he "possessed" the pills found in the Parnell vehicle; and (2) that the pills recovered constituted forty or more dosage units of methamphetamine. Lavant does not challenge on appeal the "intent to sell" element supporting his conviction under section 41-29-139(a)(1).

## II.      Sufficiency of the Evidence

### A.      Standard of Review

¶18.    The Mississippi Supreme Court has recently reiterated the familiar standard of review on a "sufficiency of the evidence" challenge, as follows:

> This Court reviews de novo a trial court's ruling on the legal sufficiency of the evidence. *Brooks v. State*, 203 So. 3d 1134, 1137 [(¶11)] (Miss. 2016). When reviewing a case for sufficiency of the evidence, "'[a]ll credible evidence that is consistent with guilt must be accepted as true, and the State is given the benefit of all favorable inferences that may be reasonably drawn from the evidence.'" *Burrows v. State*, 961 So. 2d 701, 705 [(¶9)] (Miss. 2007) (quoting *Daniels v. State*, 742 So. 2d 1140, 1142 [(¶6)] (Miss. 1999), *overruled on other grounds* by *Wilson v. State*, 867-68 [(¶41)] (Miss. 2016)). We examine the evidence in the light most favorable to the State, while keeping in mind the beyond-a-reasonable-doubt burden of proof standard. *Dees v. State*, 126 So. 3d 21, 26 [(¶18)] (Miss. 2013). "Should the facts and inferences 'point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,' the proper remedy is for the appellate court to reverse and render." *Brown v. State*, 965 So. 2d 1023, 1030 [(¶25)] (Miss. 2007). Ultimately, "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Shelton v. State*, 214 So. 3d 250, 256 [(¶29)] (Miss. 2017) (quoting *Bush v. State*, 895 So. 2d 836, 843 [(¶16)] (Miss. 2005), *overruled on other*

*grounds by Little v. State*, 233 So. 3d 288, 291 [(¶19)] (Miss. 2017)).

*Haynes v. State*, 250 So. 3d 1241, 1244 (¶6) (Miss. 2018).

## B.    Constructive Possession

¶19.    Lavant asserts that the State did not prove that he "possessed" the pills found in Parnell's vehicle.  The applicable law provides that "[p]ossession of a controlled substance may be actual or constructive." *O'Donnell v. State*, 173 So. 3d 907, 917 (¶22) (Miss. Ct. App. 2015).  Because Lavant did not have actual possession of the pills, the State was required to prove that Lavant had constructive possession of the methamphetamine. *Glidden v. State*, 74 So. 3d 342, 345 (¶12) (Miss. 2011) ("When, as here, a defendant does not physically possess the illegal drugs, the State must prove constructive possession of the drugs in order to prevail.").  "To establish constructive possession, the drug merely has to be found near the defendant in a place over which the defendant exercises dominion or control." *Fontenot v. State*, 110 So. 3d 800, 804 (¶9) (Miss. Ct. App. 2012) (internal quotation mark omitted). "The defendant's proximity to the drugs is a factor in establishing constructive possession, but it is not determinative." *Knight v. State*, 72 So. 3d 1056, 1063 (¶26) (Miss. 2011).  In this case, Lavant did not own the vehicle in which the pills were found.  "When illegal substances are found on premises not owned by the defendant, the State must show other incriminating circumstances, in addition to proximity, in order to prove constructive possession." *Fontenot*, 110 So. 3d at 804 (¶9) (internal quotation mark omitted).  Finally, "[t]he elements of constructive possession may be proven by circumstantial evidence." *Id.* at (¶12).

¶20. According to Lavant, the State did not prove that he had the requisite dominion and control over Parnell's vehicle to prove constructive possession because he was not "the exclusive user *for some extended period of time*" at the time of his arrest. *Gavin v. State*, 785 So. 2d 1088, 1094 (¶21) (Miss. Ct. App. 2001) (emphasis added). We find no merit in this argument. Lavant relies on one statement from *Gavin*, and it is taken out-of-context. The principle Lavant relies upon, stated in full, is that "[b]eing in a closed area such as a vehicle . . . with contraband does not by itself permit the inference of dominion and control. If the accused is the owner of the premises, or if he is the exclusive user for some extended period of time, *or if there are additional incriminating circumstances*, then the inferences might be permissible." *Id.* (emphasis added). The record contains ample proof of "additional incriminating circumstances" supporting a finding of constructive possession in this case.

¶21. "It is the province of the jury 'to decide the weight and credibility to be assigned to the testimony of each witness.'" *Fontenot*, 110 So. 3d at 803 (¶8) (quoting *Glidden*, 74 So. 3d at 349 (¶21)). In this case, the record reflects that Lavant was the driver and sole occupant of the vehicle when he was stopped by Officer Cowan. Lavant admitted at trial that he had been in the vehicle earlier that day, sitting in the passenger's seat for thirty to forty-five minutes on the way to the casino. He further admitted that he frequently used Parnell's vehicle, so many times "that he could not count [them.]"

¶22. Moreover, the jury heard Investigator Fore's testimony that in his experience many people who sell drugs or who travel around with drugs do not use their personal vehicles so they can use "the line, [']It's not my vehicle. It's not my drugs[.']" The jury also heard

11

Officer Cowan's testimony that persons who have illegal contraband in their vehicle often want to distance themselves from the vehicle when they are stopped—conduct that Lavant displayed in this case when, shortly after being stopped, Lavant asked to get out of the vehicle to use the restroom at a nearby gas station. Officer Cowan refused his request.

¶23. Proof of additional incriminating circumstances developed when DUI Officer Cummings arrived on the scene. Although Lavant testified that he was out of the vehicle when Officer Cummings arrived, both Officer Cowan and Officer Cummings testified to the contrary. Officer Cowan testified that he denied Lavant's request to leave the vehicle, and Officer Cummings testified that Lavant was still in the vehicle when he got there. Officer Cummings testified that at this point, he observed Lavant trying to stuff something between the driver's seat and the center console. He told Officer Cowan what he saw, and Officer Cowan testified that he then obtained consent to search the vehicle, and he recovered the unlabeled pill bottle containing 142 multi-colored, multi-shaped pills from between the driver's seat and the console—the same area where Officer Cummings saw Lavant "fiddling around" with something when he first arrived on the scene. The record reflects that the multi-colored, multi-shaped pills recovered from the vehicle contained methamphetamine and were commonly referred to as ecstasy. The record also reflects that the white pills recovered from the vehicle's center console also contained methamphetamine.

¶24. Finally, Lavant testified that he had been gambling at the casino since earlier that day, and Investigator Fore testified that, based on his experience, people often sell drugs at the casino. Lavant testified that he had $200 in twenty-dollar bills in his wallet on the night of

12

his arrest, but according to Lavant, he had $200 in twenty-dollar bills because he played blackjack and bet forty dollars at a time. The jury also heard Investigator Fore's testimony, however, that the standard price for one dosage unit of ecstasy was twenty dollars.

¶25. In short, the record reflects substantial evidence that Lavant constructively possessed methamphetamine under section 41-29-139(a)(1). *See Patterson v. State*, 37 So. 3d 702, 704 (¶12) (Miss. Ct. App. 2010) (finding sufficient evidence to sustain a possession-of-cocaine conviction where police officers testified that they observed the defendant drop an object, and that the recovered object contained an illegal drug); *see also Cantrell v. State*, 224 So. 3d 1278, 1281 (¶15) (Miss. Ct. App. 2017) (finding that "substantial evidence" supported the jury's determination that the defendant possessed syringes (one of which contained methamphetamine) where the officer "observed [the defendant] remove something from his pants pocket and throw it . . . [and, later] when [the officer] searched the area where he saw [the defendant] throw the item, and he found two syringes."). We do not find it unreasonable that the jury determined that Lavant constructively possessed the methamphetamine in Parnell's vehicle. "If reasonable jurors could have reached different conclusions with respect to every element of the offense, the evidence will be considered sufficient." *Fontenot*, 110 So. 3d at 804 (¶12).

### C. Possession of Forty or More Dosage Units of Methamphetamine

¶26. Lavant also asserts that the State did not prove that he possessed forty or more dosage units of methamphetamine because an insufficient amount of pills were tested. This Court rejected a similar argument in *Fay v. State*, 133 So. 3d 841 (Miss. Ct. App. 2013),

recognizing that "'random testing is permissible when the seized samples are sufficiently homogeneous so that one may infer beyond a reasonable doubt that the untested samples contain the same substance as those that are conclusively tested.'" *Id.* at 845 (¶9) (quoting *People v. Adair*, 940 N.E.2d 292, 295 (Ill. App. Ct. 2010)).

¶27.   In *Fay*, the accused was charged with possessing between .1 gram and two grams of methadone, a controlled substance.  *Fay*, 133 So. 3d at 844 (¶7).  At trial, the forensic scientist testified that the bag of pill fragments contained .6 gram of methadone based on his analysis of one of the pill fragments.  *Id.* (¶¶7-8).  Fay argued that because not all the pill fragments were tested, the State did not present sufficient evidence that he possessed between .1 gram and 2 grams of methadone.  *Id.* This Court disagreed, observing that the pill fragments were the same color and had the same marking.  *Id.* at 845 (¶11).  As such, "based on the relatively homogeneous nature of the pill fragments, it was not necessary . . . to test every pill fragment."  *Id.*  Consequently, this Court held, there was sufficient evidence for the jury to conclude that Fay possessed between .1 gram and two grams of methadone.  *Id.*; *see also O'Kelly v. State*, No. 2016-KA-01147-COA, 2018 WL 4141037, at *5 (¶¶27-28) (Miss. Ct. App. Aug. 30, 2018) (holding that testing eight out of 425 randomly selected squares (hits) of NBOMe (a controlled substance) was sufficient evidence supporting possession of at least forty dosage units of NBOMe given that the record lacked any evidence that the 417 untested squares were any different from the eight that were tested).

¶28.   The same analysis used in *Fay* and *O'Kelly* applies in this case.  Jackson, the State's forensic scientist, testified that she sorted the 186 multi-colored, multi-shaped pills into

14

groups by color, shape, and imprint, creating sixteen groups. She further testified that because the pills in each group were homogeneous (having the same color, imprint, and shape), she tested one pill from each group. The pills tested positive for methamphetamine. Based upon this evidence alone, there was sufficient evidence for the jury to conclude that Lavant possessed forty or more dosage units of methamphetamine. *Fay*, 133 So. 3d at 844-45 (¶¶7-11); *O'Kelly*, 2018 WL 4141037, at *5 (¶¶27-28). Regarding the forty-four white pills in the other bottle, Lavant asserts that Jackson admitted that these white pills may have been "dusted," or contaminated, with methamphetamine from the 142 multi-colored, multi-shaped pills. Nevertheless, there is sufficient evidence that Lavant possessed 142 dosage units of methamphetamine based upon Jackson's testing of the multi-colored, multi-shaped pills, well over the forty dosage units required for a conviction.

### D. Lack of Fingerprints or DNA Evidence

¶29. Finally, Lavant asserts that his case is akin to the circumstances in *Fultz v. State*, 573 So. 2d 689 (Miss. 1990), a case in which the Mississippi Supreme Court found that the State failed to prove constructive possession of marijuana where the defendant was found sleeping in a vehicle he did not own, and marijuana was found in the vehicle's trunk. *Id.* at 691. Lavant emphasizes the supreme court's observation in *Fultz* that the police did not collect fingerprints from the trunk, asserting that the police in his case likewise failed to collect fingerprints or DNA evidence on either of the pill bottles they recovered from Parnell's vehicle.

¶30. The *Fultz* case is entirely distinguishable from the case before us. In relevant part, the

15

Mississippi Supreme Court held in *Fultz* that "[i]n light of . . . *the absence of any evidence connecting the defendant with the trunk or any of its contents*, we have no choice but to reverse this conviction and discharge the defendant." *Id.* (emphasis added). In contrast, despite the lack of fingerprints in this case, sufficient evidence, as described above, supports a finding of constructive possession of at least forty dosage units of methamphetamine in Lavant's case. Further, the jury also heard Investigator Fore's explanation why fingerprints were not collected. As Investigator Fore explained, multiple officers had touched the bottles, and unlike what people have seen on television, fingerprints were rarely recovered. He also explained that the police department had an in-house fingerprint analyst, and if that person was unable to obtain a latent print of value, he would not send the evidence to the forensics lab. Investigator Fore also explained that DNA testing was not something that was normally done in a drug investigation, and was typically reserved for rape cases or similar crimes.

¶31. "[I]n deliberating on its verdict, the jury had every right to apply common sense, common experience, and sound honest judgment in considering and weighing the testimony of the witnesses and the exhibits received into evidence." *Glidden*, 74 So. 3d at 349 (¶21). In viewing the evidence in the light most favorable to the prosecution, as we must do, we find that the evidence was sufficient for a rational juror to find, beyond a reasonable doubt, that Lavant possessed forty or more dosage units of methamphetamine. *See Haynes*, 250 So. 3d at 1244 (¶6).

¶32. Lavant does not challenge the "intent to sell" element of his conviction, and, because we find that sufficient evidence supports both the possession and quantity elements of

16

Lavant's conviction, we find Lavant's "sufficiency of the evidence" assignment of error without merit.

### III.    Weight of the Evidence

### A.    Standard of Review

¶33.    Alternatively, Lavant asserts that the trial court erred when it denied his motion for a new trial because the evidence is against the overwhelming weight of the evidence.  "[A] motion for a new trial challenges the weight of the evidence and is reviewed by an abuse-of-discretion standard."  *Cantrell*, 224 So. 3d at 1281 (¶13).  Further, "[w]hen determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial."  *Id*. (¶11).  As this Court has held, "only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." *Id.*

### B.    Analysis

¶34.    As we detailed in the preceding section, we find that the record contains substantial credible evidence that Lavant possessed forty or more dosage unites of methamphetamine. We further observe that Lavant does not challenge the "intent to sell" element of his conviction.  Based upon the same evidence addressed above, we also find no abuse of discretion in the trial court denying Lavant's motion for a new trial.   As this Court consistently recognizes, "'the jury is the sole judge of the credibility of witnesses, and the

17

jury's decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict.'" *Cantrell*, 224 So. 3d at 1281 (¶15) (quoting *Whitlock v. State*, 47 So. 3d 668, 675 (¶21) (Miss. 2010)). Accepting the evidence supporting the jury's verdict as true in this case, "we cannot find that the verdict is so against the overwhelming weight of the evidence as to sanction an unconscionable injustice." *Id.* at 1281 (¶17). This issue is without merit.

¶35. **AFFIRMED.**

**GRIFFIS, C.J., BARNES, P.J., WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. McDONALD, LAWRENCE AND McCARTY, JJ., NOT PARTICIPATING.**