ROBERTS, J.,
for the Court:
¶ 1. A jury sitting before the Forrest County Circuit Court found Tommy James Fay guilty of possession of a controlled substance. The circuit court sentenced Fay to eight years in the custody of the Mississippi Department of Corrections (MDOC), with two years suspended and six years to serve, followed by two years of post-release supervision. Aggrieved, Fay appeals. Fay claims there was insufficient evidence to convict him. Additionally, Fay claims the jury’s verdict is contrary to the overwhelming weight of the evidence. Finally, Fay claims the circuit court erred when it gave two of the prosecution’s jury instructions and refused one of his own proposed jury instructions. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. On June 5, 2010, Deputy Tim Eu-banks of the Forrest County Sheriffs Department pulled over a pickup that was being driven erratically by Darrell Fay (Darrell). Darrell’s brother, Fay, was riding in Darrell’s passenger seat. Darrell admitted that he had no driver’s license or insurance. Deputy Eubanks asked Darrell to take a portable breath test. Darrell complied. Deputy Eubanks placed Darrell in custody. Deputy Eubanks left Darrell in the back of his patrol car.
¶ 3. Deputy Eubanks had told Darrell’s passenger, Fay, to put his hands on the dashboard. However, Deputy Eubanks noticed that Fay was moving around inside of Darrell’s truck. Deputy Eubanks went to the passenger side of Darrell’s truck and asked Fay for identification. Deputy Eubanks then told Fay to get out of Darrell’s truck. When Fay complied, a pill fell to the ground. Deputy Eubanks placed Fay in custody and patted him down. Deputy Eubanks found a small plastic bag in Fay’s front pocket. The plastic bag contained pill fragments. Keith McMahan of the Mississippi Crime Laboratory later identified the pill fragments as methadone after testing one of the pill fragments.
¶ 4. Fay was indicted for possession of between .1 gram and two grams of methadone. Fay pled not guilty. On October 20, 2011, Fay went to trial. The prosecution called Deputy Eubanks as its first witness. Next, Assistant Commander Nick Calico and Commander Greg Holli-man of the Twelfth Circuit Court Judicial Narcotics Team testified regarding the chain of custody of the pill fragments that Deputy Eubanks found on Fay. Finally, McMahan testified regarding his conclusion that the pill fragments contained .6 gram of methadone.
¶ 5. Fay called Darrell as his first witness. Darrell testified that he tried to throw the bag of pill fragments out of the passenger-side window when he saw that Deputy Eubanks was going to pull him over. According to Darrell, the bag did not go out of the window. Instead, the bag “wound up back in the truck in [Fay’s] lap.” Darrell went on to testify that when the bag did not go out of the window, he asked Fay to put the bag in his pocket. Darrell said that Fay complied. Fay also took the stand. He corroborated Darrell’s testimony. Fay also testified that Darrell had a drug problem in the past. Even so, Fay concealed the bag of pill fragments at Darrell’s request. The jury found Fay guilty of possession of between .1 gram and two grams of methadone. Following unsuccessful motions for a judgment notwithstanding the verdict (JNOV) or a new trial, Fay appeals.
*844 ANALYSIS
I. SUFFICIENCY OF THE EVIDENCE
¶ 6. Fay claims that there was insufficient evidence to convict him of possession of methadone. As our Mississippi Supreme Court has stated:
[I]n considering whether the evidence is sufficient to sustain a conviction in the face of a motion for [a] directed verdict or for [a JNOV], the critical inquiry is whether the evidence shows beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction. ... [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Should the facts and inferences considered in a challenge to the sufficiency of the evidence point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty, the proper remedy is for the appellate court to reverse and render.
Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (internal citations and quotations omitted). However, this Court will determine that there was sufficient evidence to sustain the jury’s verdict if the evidence was “of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense.” Id. (citations and quotations omitted).
¶ 7. Fay notes that he had a bag that contained pill fragments, and he was charged with having between .1 gram and two grams of a controlled substance or between two and ten dosage units of a controlled substance. McMahan testified that the bag of pill fragments contained .6 gram of methadone. “For any controlled substance that does not fall within the definition of the term ‘dosage unit,’ the penalties shall be based upon the weight of the controlled substance.” Miss.Code Ann. § 41-29-139(c) (Supp.2012). Section 41-29-139(c) further provides that “[t]he weight set forth refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance.”
¶ 8. Fay draws attention to the fact that McMahan tested one pill fragment. McMahan did not test each pill fragment. And McMahan did not note the weight of the fragment that he tested. Based on the presence of methadone in that fragment, McMahan used a gas chromato-graph and mass spectrometer (GCMS) to conclude that Fay possessed .6 gram of methadone. Fay reasons that because the prosecution did not test each pill fragment for methadone, the prosecution failed to present sufficient evidence that Fay possessed between .1 gram and two grams of methadone.
¶ 9. Neither Fay nor the State cite any Mississippi cases that have addressed this issue. We turn to other jurisdictions for persuasive guidance. In People v. Adair, 406 Ill.App.3d 133, 346 Ill.Dec. 292, 940 N.E.2d 292, 295 (2010), the Appellate Court of Illinois was confronted with a somewhat similar set of circumstances. The Adair court noted Illinois precedent that “[a] forensic chemist is generally not required to test all of the suspected narcotic substance to opine that the recovered *845 substance as a whole contains narcotics.” Id. at 297 (citation omitted). Furthermore, “[r]andom testing is permissible when the seized samples are sufficiently homogeneous so that one may infer beyond a reasonable doubt that the untested samples contain the same substance as those that are conclusively tested.” Id. (citation omitted).
¶ 10. The specific issue in Adair involved circumstances in which a forensic scientist was tasked with testing twenty-one pills, three pill fragments, and a powdered substance. Id. at 295. The pills were five different colors and had three different imprints. Id. The forensic scientist created a “representative sample” by poking each pill with a glass tip to retrieve a powdered sample and then adding each sample together. Id. The forensic scientist then used a GCMS to determine that the “representative sample” contained methamphetamine and the narcotic abbreviated as MDMA. Id. at 295-96. According to the forensic scientist, the total weight of the variously colored and marked pills and the powdered substance was 6.3 grams. Id. at 295. However, based on the forensic scientist’s testing methodology, the Adair court held that there was insufficient evidence to conclude that the accused was guilty of possession of at least fifteen dosage units of MDMA or possession of more than five grams of methamphetamine. Id. at 301.
¶ 11. We find the Illinois court’s reasoning persuasive. Unlike the pills in Adair, the pill fragments in this case were the same color. Additionally, the pill fragments bore the same marking. McMahan testified that based on the markings on the pill fragments, he was able to determine that they originated from Malinckrodt Pharmaceuticals. Based on the relatively homogeneous nature of the pill fragments, it was not necessary for McMahan to test every pill fragment. Consequently, we find that there was sufficient evidence for the jury to conclude that Fay possessed between .1 gram and two grams of methadone. There is no merit to this issue.
II. WEIGHT OF THE EVIDENCE
¶ 12. Fay argues that the circuit court erred when it overruled his motion for a new trial. This Court “will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18) (citation omitted). The supreme court has further instructed that when reviewing a trial court’s decision to deny a motion for a new trial:
The motion ... is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. However, the evidence should be weighed in the light most favorable to the verdict. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Rather, ... the court simply disagrees with the jury’s resolution of the conflicting testimony. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial.
Id. (footnote, internal citations, and quotations omitted).
¶ 13. Fay reiterates his defense at trial. Briefly stated, Fay argues that the verdict was contrary to the overwhelming weight of the evidence because he and Darrell both testified that the pill frag *846 ments actually belonged to Darrell. That is, when Darrell realized that he was going to be pulled over, he attempted to throw the bag of pill fragments out of the passenger-side window. When the bag of pill fragments did not go out of the window, Darrell asked Fay to put them in his pocket, and Fay complied. Fay testified that Darrell had used drugs in the past. During cross-examination, the following exchange occurred:
Q. So you want the jury to believe that you had no idea you were sticking something illegal in your pocket knowing your brother had a drug problem and with a police officer with his blue lights on coming up behind you to pull you over?
A. Yes, sir, that’s what I want the jury to believe.
[[Image here]]
Q. And none of that kind of set off alarm bells in your head that this may be something I ought not to be messing with?
A. No, not really. He hadn’t been showing [any] signs of drug use, and he’s been living with me.
Q. Mr. Fay, your brother[,] who you know ... at least in the past has had a drug problem[,] is pleading with you to put this in your pocket at the same time that you’re being pulled over[,] and it never entered your mind that what you were doing was potentially illegal?
A. No, sir.
Fay was forty-six years old at the time of his trial. Before Deputy Eubanks searched Fay, he noticed a bulge in Fay’s pocket. Deputy Eubanks asked Fay what he had in his pocket. Fay denied that he had anything in his pocket. Deputy Eu-banks then removed the bag of pill fragments from Fay’s pocket. Accordingly, Fay had dominion and control over the bag of pill fragments: Furthermore, “[t]he jury determines the weight and credibility of witness testimony.” Nelson v. State, 10 So.3d 898, 905 (¶ 29) (Miss.2009). Under the precise circumstances of this case, the jury could have chosen not to believe Fay’s testimony. Suffice it to say, it would not sanction an unconscionable injustice to affirm the jury’s verdict. We find no merit to this issue.
III. JURY INSTRUCTIONS
¶ 14. Fay claims the circuit court erred when it refused one of his proposed jury instructions and gave two of the prosecution’s proposed jury instructions. According to Fay, the circuit court’s decisions deprived him of the opportunity to present his defense theory. Jury instruction issues “generally are within the discretion of the trial court.” Maye v. State, 49 So.3d 1124, 1129 (¶ 7) (Miss.2010). The Mississippi Supreme Court has instructed:
In determining whether error lies in the [giving] or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. There is no error if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law.
Id. Additionally, “a defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.” Id.

A. Proposed Jury Instruction D-4

¶ 15. Fay claims the circuit court erred when it refused proposed jury instruction D^i, which states:
*847 The [e]ourt instructs the jury that possession of a controlled substance cannot be established when the only evidence connecting the [a]ccused to the substance is the momentary holding of the substance.
If you find from the evidence that ... Fay momentarily held the substances in question at the request of [Darrell] ... and without knowledge of what the substances were[,] then you shall find ... Fay not guilty of possession of a controlled substance.
The circuit judge refused proposed jury instruction D-4 because he did “not think this is a case of momentary possession” because Fay “took possession and maintained possession” of the bag of pill fragments. According to Fay, by refusing proposed jury instruction D-4, the circuit court deprived Fay of his defense theory.
¶ 16. “[Possession requires actual or constructive control, not a mere passing control which occurs from a momentary handling.” Mauldin v. State, 750 So.2d 564, 566 (¶ 8) (Miss.Ct.App.1999) (citation omitted). The evidence did not support proposed jury instruction D-4. Even under Fay’s version of events, Fay took possession of the bag of pill fragments and maintained control of it. It was proper for the circuit court to refuse a proposed jury instruction that was not supported by the evidence.

B. Jury Instruction S-3

¶ 17. According to Fay, the circuit court erred when it gave two of the prosecution’s jury instructions. Jury instruction S-3 instructed the jury that “if you believe that the substance was subject to [Fay’s] dominion and control, it is your duty as jurors to find him guilty as charged.” Fay claims that jury instruction S-3 was essentially a peremptory instruction that omitted the other essential elements to convict Fay of possession of a controlled substance. Fay cites Banyard v. State, 47 So.3d 676 (Miss.2010), to support his argument that a defendant is entitled to have instructions on his defense theory. However, the reversible error in Banyard was related to a jury instruction that improperly shifted the burden of proof to the defendant. See id. at 684 (¶ 22).
¶ 18. Jury instruction S-3 did not shift the burden of proof to Fay. And although it did not include all of the elements necessary to find Fay guilty of possession of between .1 gram and two grams of methadone, the other necessary elements were included in other jury instructions. When read together, the jury instructions properly instructed the jury regarding what it must find to convict Fay.

C. Jury Instruction S-4

¶ 19. Finally, Fay argues that the circuit court erred when it gave jury instruction S-4, which states:
The [j]ury is instructed that when weight of a narcotic drug is discussed, it is not necessary for the State to prove the pure weight of a narcotic drug separate and apart from any mixture that contains a detectable amount of the charged substance.
If you believe beyond a reasonable doubt that the total mixture weight was accurate as testified under oath, then you shall consider that weight to be the weight of the narcotic drug as charged in the indictment.
According to Fay, jury instruction S-4 was improper because McMahan did not test each of the pill fragments. In other words, Fay reiterates his argument regarding the sufficiency of the evidence. We addressed that argument in Fay’s first issue. Because of the homogeneous na *848 ture of the pill fragments, it was not necessary for McMahan to test every individual pill fragment. There is no merit to this issue.
¶ 20. THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF BETWEEN .1 GRAM AND TWO GRAMS OF A CONTROLLED SUBSTANCE AND SENTENCE OF EIGHT YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWO YEARS SUSPENDED AND SIX YEARS TO SERVE, FOLLOWED BY TWO YEARS OF POST-RELEASE SUPERVISION, AND A $2,500 FINE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P JJ., ISHEE, MAXWELL AND FAIR, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY JAMES, J.