# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00025-COA

**DCORIOUS ALFORD A/K/A DCORIOUS KEON ALFORD A/K/A DECORIUS KEON ALFORD**                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                              **APPELLEE**

DATE OF JUDGMENT:               11/05/2021
TRIAL JUDGE:                    HON. TOMIKA HARRIS IRVING
COURT FROM WHICH APPEALED:      COPIAH COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         OFFICE OF STATE PUBLIC DEFENDER
                                BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                BY: ALLISON ELIZABETH HORNE
DISTRICT ATTORNEY:              ALEXANDER C. MARTIN
NATURE OF THE CASE:             CRIMINAL - FELONY
DISPOSITION:                    AFFIRMED - 01/24/2023
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., SMITH AND EMFINGER, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Dcorious Alford appeals his convictions of trafficking methamphetamine with intent to distribute and possession of marijuana with intent to distribute. On appeal, Alford argues that the evidence presented at trial was insufficient to support his convictions and that the verdicts were contrary to the overwhelming weight of the evidence.

¶2.     After our review, we find no error. We therefore affirm Alford's convictions and sentences.

## FACTS

¶3.     Officer Bobby Herron of the Crystal Springs Police Department testified that on June

19, 2020, he received a call from another police officer alerting him that Alford was in town at the Community Quick Stop. Officer Herron explained that Alford had an outstanding warrant out for his arrest. Officer Herron and Officer Russell Wooten then drove toward the Quick Stop in an attempt to execute the arrest warrant.

¶4. Officer Herron testified that as the officers were traveling south in a patrol car, he spotted the Nissan Quest van that Alford was reported to be driving. He and Officer Wooten followed the vehicle, and the vehicle eventually pulled into a parking lot. The officers followed the vehicle into the parking lot. The officers then observed Alford exit the vehicle from the driver's side. Officer Herron clarified that Alford had been driving the vehicle.

¶5. After searching the vehicle, the officers found the following items within arm's reach of the driver's seat: three plastic bags containing marijuana, a plastic bag containing pills that later tested positive for methamphetamine, a white powdery substance on the floorboard under the driver's seat, and a digital scale and razor blade on the center console. Upon searching Alford's person, the officers discovered additional plastic bags and a plastic bag containing $1,490 in cash.

¶6. Alford was indicted for one count of trafficking methamphetamine with intent to distribute (Count I), one count of possession of cocaine with intent to distribute (Count II), and one count of possession of marijuana with intent to distribute (Count III), in violation of Mississippi Code Annotated section 41-29-139 (Rev. 2018). Following a jury trial, Alford was convicted of Counts I and III and acquitted of Count II. The Copiah County Circuit

Court sentenced Alford as a non-violent habitual offender to serve twenty-five years in the custody of the Mississippi Department of Corrections (MDOC) for his conviction in Count I, with a consecutive sentence of five years ordered for his conviction in Count III. The circuit court also ordered Alford to pay a fine of $10,000 plus court costs relating to Count I.

¶7. The circuit court denied Alford's motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. Alford now appeals.

## DISCUSSION

### I. Sufficiency of the Evidence

¶8. Alford argues that the evidence was insufficient to support his convictions for possession of marijuana with intent to distribute and trafficking methamphetamine with intent to distribute.

¶9. A motion for JNOV challenges the legal sufficiency of the evidence. *State v. Murphy*, 202 So. 3d 1243, 1252 (¶16) (Miss. 2016). We apply a de novo standard when reviewing a circuit court's denial of a motion for JNOV. *Id*. at 1251 (¶16). When reviewing a challenge to the sufficiency of the evidence on appeal, we must examine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Garrett v. State*, 344 So. 3d 849, 851 (¶12) (Miss. 2022). "We view all of the evidence in the light most favorable to the prosecution, accept all the evidence supporting the verdict as true, and give the prosecution the benefit of all favorable inferences that reasonably may be drawn from the evidence." *Id*. "We will reverse and render if the facts and inferences favor

3

the defendant with such force that reasonable jurors could not find him guilty beyond a reasonable doubt." *Smoots v. State*, 310 So. 3d 1184, 1189 (¶17) (Miss. Ct. App. 2020). "However, we must affirm if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks omitted).

### A. Possession

¶10. "To establish possession of a controlled substance, the State must produce evidence that a defendant (1) was aware of the presence of a substance, (2) was aware of the character of the substance, and (3) was consciously and intentionally in possession of the substance." *Williams v. State*, 334 So. 3d 68, 73 (¶5) (Miss. 2022). "Possession of a controlled substance may be actual or constructive." *O'Donnell v. State*, 173 So. 3d 907, 917 (¶22) (Miss. Ct. App. 2015).

### 1. Marijuana

¶11. In the case before us, the bags of marijuana were not found in Alford's physical possession; rather, they were found in the vehicle that he was driving. Additional plastic bags, including one with the cash, were found on his person. Accordingly, "the State was required to prove that [Alford] had constructive possession of the [marijuana]." *Reindollar v. State*, 296 So. 3d 739, 742 (¶13) (Miss. Ct. App. 2020). The State must constructively establish that Alford was consciously and intentionally in possession of the marijuana by submitting evidence showing that Alford "had dominion or control over the [marijuana]." *Williams*, 334 So. 3d at 73 (¶6). "A finding of constructive possession requires a finding that

4

the defendant had some type of control over the drugs under the totality of the circumstances." *Id*. (internal quotation marks omitted). "The elements of constructive possession may be prove[d] by circumstantial evidence." *Fontenot v. State,* 110 So. 3d 800, 804 (¶12) (Miss. Ct. App. 2012).

¶12. At trial, the jury heard testimony from Officer Herron, Officer Wooten, and Alison Conville, a forensic scientist at the Mississippi Forensics Laboratory.

¶13. Both police officers testified that Alford had an outstanding warrant out for his arrest. After receiving a tip regarding Alford's location, the officers located the van Alford was driving and followed the vehicle into a parking lot. The officers then exited the patrol car and informed Alford that he had an outstanding arrest warrant.

¶14. Officer Wooten then proceeded to speak with Alford while Officer Herron interviewed the two passengers inside of the van: Collins,[1] who was sitting in the front-right passenger seat, and Troy Walker, who was sitting in the back passenger seat.

¶15. Officer Herron testified that while he spoke to Collins and Walker, he could "clearly smell the presence of marijuana coming from the vehicle." He also testified that he could see a digital scale sitting on the center console of the van (between the driver's seat and passenger seat) in plain view. Officer Herron stated that he also observed a small razor blade beside the digital scale.

¶16. Officer Herron testified that he performed pat downs on Collins and Walker. Officer

---

[1] Collins's first name is not in the record.

5

Herron testified that during the pat downs, he felt something in Walker's pocket, which turned out to be $1,000 in cash. Officer Herron asked Walker about the money, and Walker informed him that he earned the money by cutting grass for a living.

¶17.  Officer Herron testified that he searched the vehicle and discovered a clear plastic bag containing "a green leafy substance which appeared to be marijuana" inside of a compartment above the vehicle's cigarette lighter. In another compartment near the cigarette lighter, Officer Herron found two additional clear bags containing the same green leafy substance, as well as a bag containing pills. Officer Herron also found a white powdery substance on the floorboard under the driver's seat. Officer Herron testified that when he picked up the substance, it was in "a rock form." Officer Herron testified that all of the contraband found in the van—the bags containing the green leafy substance, the bag containing the pills, and the white powdery substance—was located within arm's reach of the driver's seat. Officer Herron questioned Collins and Walker about the drugs found in the van, and they both informed Officer Herron that they did not know anything about the drugs.

¶18.  Conville, the forensic scientist at the Mississippi Forensics Laboratory, testified that she tested the drugs found at the scene. Conville confirmed that the leafy green substance was marijuana.[2]

¶19.  Officer Herron admitted that he did not know who owned the Nissan Quest that

---

[2] Conville also testified that she tested the white powdery and rock-like substance, and she identified it as cocaine.

Alford was driving. Officer Herron explained that the van had a used dealership tag on the license plate. Officer Wooten later testified that he and Officer Herron ran a check on the vehicle to determine who owned it, and at the time they ran the check, the results revealed that the vehicle did not belong to Alford.

¶20. Officer Wooten testified that while Officer Herron was talking with Collins and Walker, he arrested Alford due to the existing warrant. Officer Wooten performed a *Terry*[3] frisk on Alford and discovered "many little plastic baggies" and a clear plastic bag containing $1,490 in cash on Alford's person.

¶21. Alford argues that the State failed to prove that he owned the vehicle where the drugs were found or that he was in exclusive possession of the vehicle. We recognize that "one who owns a vehicle in which contraband is found is presumed to be in constructive possession of those illicit items." *Reindollar*, 296 So. 3d at 742-43 (¶14). However, as asserted by the State, ownership of the location where the contraband is found is not required to prove possession. "[W]hen contraband is found in a vehicle that is not owned by a defendant, mere physical proximity to the contraband does not, in itself, show constructive possession." *Id*. In cases like the one before us, where the defendant does not own the vehicle where the contraband is found, "[t]he State is required to establish additional incriminating circumstances in order to prove constructive possession." *Id*. "The jury is charged with the responsibility of weighing and considering conflicting evidence, evaluating

---

[3] *Terry v. Ohio*, 392 U.S. 1 (1968).

7

the credibility of witnesses, and determining whose testimony should be believed." *Id.* at 744 (¶20).

¶22. In *Reindollar*, the defendant appealed his conviction for possession of methamphetamine, arguing that the State failed to prove that he "had consciously exercised control over the drugs." *Id.* at 743 (¶15). The defendant asserted that "he did not own the vehicle, that he was not in exclusive control of the vehicle, and that he did not know that the drugs were present in the vehicle." *Id.* On appeal, this Court found the record contained substantial evidence to support the jury's finding that the defendant possessed methamphetamine. *Id.* at 744 (¶20). This Court explained that although the record reflected that the defendant was not the owner of the vehicle where the drugs were found, the defendant admitted that he had driven the vehicle. *Id.* at 743 (¶16). This Court also found that the State presented testimony from a police officer stating that a "set of scales, which are commonly used for weighing narcotics," and two bags containing methamphetamine were found in close proximity to the driver's seat. *Id.* at (¶¶16, 18).

¶23. Similarly, we find the record in this case reflects sufficient evidence for a jury to find that Alford knew the nature of the substances found in the vehicle and that he consciously possessed them. Although Alford did not own the vehicle, the State presented "other incriminating circumstances, in addition to proximity," to support a finding that Alford constructively possessed the drugs. *Fontenot*, 110 So. 3d at 804 (¶9). Officer Herron and Officer Wooten testified that Alford was driving the vehicle where the drugs were found.

8

The officers testified they observed a digital scale and razor in plain view on the center console of the van, and they found plastic bags containing drugs in close proximity to the driver's seat. Officer Wooten testified that when he searched Alford, he found many plastic bags, as well as a clear plastic bag containing $1,490 in cash. Officer Herron testified that when he approached the vehicle, he could clearly smell marijuana coming from the vehicle.

¶24. Additionally, we find no merit to Alford's argument that the State failed to show that he was in exclusive possession of the van. The Mississippi Supreme Court has stated that "[c]ontraband may . . . be possessed by more than one person at a time." *Williams*, 334 So. 3d at 73 (¶7). "Possession of a controlled substance may be actual or constructive, individual or joint." *Haynes v. State*, 250 So. 3d 1241, 1244 (¶7) (Miss. 2018).

### 2. Methamphetamine

¶25. Alford was also convicted of "unlawfully, willfully, feloniously, knowingly, and intentionally possess[ing] with intent to distribute" methamphetamine in an amount of more than forty dosage units. The record reflects that at trial, Conville testified that a plastic bag containing 128 pills was recovered from Alford's vehicle and submitted to the laboratory, and she tested three of the pills. Conville explained that she did not test every pill in the plastic bag because "[i]t's in the standard operating procedure for my section, when I have a bunch of tablets like this, that we analyze three of them, and that is a representative sample

9

from the bag." Conville testified that the pills contained methamphetamine[4] and caffeine, a non-controlled substance. She explained that although caffeine is not a controlled substance, "it is often mixed in with methamphetamine or cocaine." Conville testified that in the pills she tested, the caffeine "was mixed with the methamphetamine."

¶26. On appeal, Alford asserts that the State failed to present sufficient evidence to show that he possessed more than three "illegal" pills containing methamphetamine. Alford claims that the State did not prove that the pills were homogenous, and therefore the State failed to establish a foundation to accept a sample testing of the pills as sufficient proof that they all contained methamphetamine.

¶27. This Court has held that "a forensic chemist is generally not required to test all of the suspected narcotic substance to opine that the recovered substance as a whole contains narcotics." *O'Kelly v. State*, 267 So. 3d 282, 290 (¶27) (Miss. Ct. App. 2018) (quoting *Fay v. State*, 133 So. 3d 841, 844-45 (¶9) (Miss. Ct. App. 2013)). "Rather, random testing is permissible when the seized samples are sufficiently homogeneous so that one may infer beyond a reasonable doubt that the untested samples contain the same substance as those that are conclusively tested." *Id*. (internal quotation marks omitted).

¶28. In *Lavant v. State*, 281 So. 3d 48, 56 (¶28) (Miss. Ct. App. 2019), the State's forensic scientist "testified that she sorted the 186 multi-colored, multi-shaped pills into groups by

---

[4] As acknowledged in the State's appellate brief, on direct examination, Conville inadvertently stated the pills contained marijuana. During cross-examination, she clarified that the pills contained methamphetamine.

color, shape, and imprint, creating sixteen groups." The scientist stated that the pills in each group were homogenous, and she then tested one pill from each of the groups. *Id*. Testing confirmed that the pills contained methamphetamine. *Id*. at 56-57 (¶28). On appeal, this Court held that "[b]ased upon this evidence alone, there was sufficient evidence for the jury to conclude that Lavant possessed forty or more dosage units of methamphetamine." *Id*. at 57 (¶28).

¶29. During the trial, Alford did not raise the issue of whether the pills were homogeneous.[5] We agree with the State's assertion in its appellate brief that "[b]ecause Alford did not argue that the pills were nonhomogeneous at trial, Alford also failed to develop the record on this issue." Alford first raised the issue of whether the pills were homogeneous in his motion for JNOV or, in the alternative, a new trial. In denying Alford's motion, the circuit court found that "there was sufficient evidence for the jury to conclude that [Alford] was trafficking methamphetamine." The circuit court cited the standard set forth above in *Fay*, 133 So. 3d at 844-45 (¶9), and explained that "the forensic expert in this case testified that the three pills tested for methamphetamine was a sample of the entire bag of pills, which had the same color, shape and exterior markings as the other pills in the bag."

---

[5] The State argues that because Alford did not raise this argument at trial, he may not now raise it on appeal. The supreme court has held that "error not raised at trial or in post-trial motions may not be reviewed on appeal." *Thorson v. State*, 994 So. 2d 707, 714 (¶10) (Miss. 2007); *accord Lee v. State*, 281 So. 3d 101, 105 (¶11) (Miss. Ct. App. 2019). However, the record reflects that Alford did raise this issue in his motion for JNOV or, in the alternative, a new trial. As stated, the circuit court denied Alford's post-trial motions.

¶30.    The record reflects Conville testified that three different designs appeared on the pills: coffee cups, tic-tac-toe boards, and minions.  At trial, the jury was able to view the actual plastic bag containing the pills.  The circuit court also admitted into evidence a photograph showing the bag of pills in the compartment in the van where the officers discovered them during the search.  This photograph shows that the pills were a variety of different colors. Conville testified before the jury that she followed her office's standard operating procedure and selected three of the 128 pills as a "representative sample" from the entire bag.  Testing confirmed that each of these three pills contained methamphetamine.

¶31.    We recognize that "[t]he jury is permitted to draw any reasonable inferences from all the evidence presented in the case." *Lambert v. State*, 101 So. 3d 1172, 1177 (¶17) (Miss. Ct. App. 2012) (internal quotation marks omitted).  Based on the record before us, we agree with the State's argument that the jury could have inferred that the pills were homogeneous. We accordingly find that the State presented sufficient evidence for the jury to conclude that Alford possessed methamphetamine in an amount of more than forty dosage units.

### B.    Intent to Distribute Marijuana

¶32.    Alford next argues that the State failed to present proof showing that he possessed the marijuana with any intent to distribute it.  Alford maintains that the evidence does not support any inference that the drugs were not intended for personal use.  Alford also claims that the money found in his possession fails to establish intent to distribute, just as the $1,000 cash found on one of the passengers did not establish any intent to distribute.

12

¶33.    This Court has held that "[i]ntent to sell or distribute contraband may be established by inference from circumstantial evidence." *Campbell v. State*, 118 So. 3d 598, 604 (¶15) (Miss. Ct. App. 2012). "[I]ntent is a question of fact to be gleaned by the jury from the facts shown in each case." *Id.* The supreme court provided the following guidance with regard to proving possession with an intent to distribute or sell:

> [P]roof of possession with an intent to distribute or sell should not be based solely upon surmise or suspicion. There must be evidentiary facts which will rationally produce in the minds of jurors a certainty, a conviction beyond reasonable doubt that the defendant did in actual fact intend to distribute or sell the cocaine, not that he might have such intent. It must be evidence in which a reasonable jury can sink its teeth.

*Boyd v. State*, 634 So. 2d 113, 115 (Miss. 1994). The supreme court further explained that "criminal intent may be shown by surrounding circumstances." *Id*.

¶34.    At trial, Conville testified that the leafy green substance contained in the three bags was marijuana. Conville stated, "There was a total package weight of 64.4 grams in the three bags; however, I analyzed only two bags and found that there was 45.34 grams present." The supreme court has held that "[t]he quantity of the drug in itself can be sufficient to infer intent to distribute beyond a reasonable doubt." *Jackson v. State*, 580 So. 2d 1217, 1219 (Miss. 1991).

¶35.    In addition to the quantity of drugs, evidence "considered consistent with distribution of drugs," such as scales, weapons, and large amounts of cash, "can be considered by a fact-finder as evidence of intent." *Jenkins v. State*, 757 So. 2d 1005, 1010 (¶24) (Miss. Ct. App. 1999). Here, the police officers testified that they recovered a digital scale and razor

13

on the center console of the van. Officer Wooten testified that when he searched Alford, he found plastic bags and $1,490 in cash in a plastic bag on Alford's person. Officer Wooten opined that the evidence found on Alford and in the van was consistent with "somebody that's actually dealing in drugs and selling it on the streets." Officer Herron also testified that based on his training and experience with drug cases, this variety and amount of drugs is associated with trafficking and selling drugs.

¶36. After our review, we find that the record contains sufficient evidence to support Alford's conviction for possession of marijuana with intent to distribute. *See Campbell*, 118 So. 3d at 604 (¶16).

## II. Weight of the Evidence

¶37. Finally, Alford argues that because evidence was lacking for both of his convictions, the verdicts are contrary to the weight of evidence, and an unconscionable injustice resulted.

¶38. We review a circuit court's denial of a motion for a new trial challenging the weight of the evidence for an abuse of discretion. *Wilson v. State*, 343 So. 3d 1041, 1048-49 (¶28) (Miss. 2022). In so doing, we "view[] the evidence in the light most favorable to the verdict." *Id*. at 1049 (¶28) (internal quotation marks omitted). When "reviewing a challenge to the weight of the evidence, this Court will not disturb the jury's verdict unless it appears to be so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Garrett*, 344 So. 3d at 851 (¶13).

¶39. After viewing the evidence in this case in the light most favorable to the verdicts, we

14

cannot say that the verdicts are so contrary to the overwhelming weight of the evidence that to allow them to stand would sanction an unconscionable injustice.

## CONCLUSION

¶40. After viewing all the evidence in the light most favorable to the prosecution, accepting all the evidence supporting the verdict as true, and giving the prosecution the benefit of all favorable inferences that reasonably may be drawn from the evidence, we find that a reasonable juror could have found that the State proved beyond a reasonable doubt that (1) Alford possessed and intended to distribute marijuana, and (2) he intended to distribute more than forty dosage units of methamphetamine. *See id.* at (¶12). We also find that the jury's verdicts were not contrary to the overwhelming weight of the evidence. We therefore affirm Alford's convictions and sentences.

¶41. **AFFIRMED.**

**BARNES, C.J., GREENLEE, SMITH AND EMFINGER, JJ., CONCUR. WILSON, P.J., McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**