# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00507-COA

**ADRIAN TAMILRAH MOORE A/K/A ADRIAN MOORE A/K/A ADRIN MOORE**  APPELLANT

v.

**STATE OF MISSISSIPPI**  APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/17/2024 |
| TRIAL JUDGE: | HON. CALEB ELIAS MAY |
| COURT FROM WHICH APPEALED: | NEWTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | SANFORD E. KNOTT |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | STEVEN SIMEON KILGORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/03/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., McDONALD AND WEDDLE, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.    Following a jury trial, Adrian Moore was convicted of trafficking heroin, possession of methamphetamine, and possession of phencyclidine (PCP). On appeal, Moore now challenges the sufficiency of the evidence on all three counts. We conclude that the State presented sufficient evidence for a rational juror to find Moore guilty of each crime beyond a reasonable doubt. Therefore, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    Deputy Barry Roberts and Deputy William Kennedy with the Newton County Sheriff's Department initiated a traffic stop on Interstate 20 East after they "observed a white

sedan swerving in and out of traffic at high rates of speed without any kind of turn signal." When Roberts approached the vehicle, he "could smell the strong odor of marijuana coming from inside the vehicle" and "observed what [he] thought was marijuana on the driver's lap." Roberts identified the driver as Adrian Moore and the passenger as Tatiana Adams.

¶3. After Roberts asked Moore and Adams to exit the car, Kennedy searched the vehicle. Kennedy found "a pill bottle that had pills in it inside a purse," "a bottle of brown liquid," and "colorful different shaped pills." Roberts testified that "Moore claimed all of it." Moore was subsequently arrested, and "Adams was released with the vehicle."

¶4. After collecting the evidence, the items were transferred to the Mississippi Forensics Laboratory for testing. Prior to trial, Moore expressly stipulated to the admission of the report from the Forensics Laboratory, and it was admitted into evidence without objection during Roberts's testimony. The report stated that the items found in the car included 43 dosage units of heroin, 28 dosage units of methamphetamine, and 13 milliliters of phencyclidine. Moore was indicted for trafficking heroin (Count I), possession of methamphetamine (Count II), and possession of PCP (Count III).

¶5. At trial, Moore testified that she first met Adams when she stopped for gas in Jackson. Moore testified that she was on her way to Atlanta and agreed to drive Adams to Meridian. The subject traffic stop occurred on I-20 East in Newton County between Jackson and Meridian. Moore testified that she was "honest" with Roberts and told him that she had smoked marijuana about an hour earlier. However, Moore claimed that the purse and drugs found in her car belonged to Adams. Moore claimed she told the officers that "the only

2

thing" in the car that belonged to her was "a Nike bag." Moore testified that the officers "never questioned" Adams. Moore also acknowledged that "the piece of blunt and the weed" found in the car belonged to her. Moore testified that she did not know that there were any pills or PCP in her vehicle.

¶6.	The State called Roberts as a rebuttal witness. Moore's written statement and footage from Roberts's body camera during the stop were admitted into evidence. Moore's written statement read, "I Adrian Moore didn't know that the pills was what they was[.] I trade them to help a Homeless guy name tommy[.]" In the video, Moore can be seen retrieving her identification card from a purse in the front of the vehicle. After Kennedy found the bottle of pills, Roberts asked Moore if they were hers. She stated that they were not hers, but that someone had just given them to her. Moore told Roberts that she thought they were "regular pharmacy pills." Additionally, when Kennedy asked Moore if the purse was hers, she can be heard responding, "Yes . . . . That's my purse." Kennedy then presented Moore with several pills wrapped in plastic, and she responded, "I forgot about those . . . . I know what that is." When Roberts asked her if the pills were hers, Moore again responded, "Yes." Lastly, when Roberts showed Moore the bottle of liquid, she told him that it was called "wet" and was used on cigarettes. Moore then told Roberts that she had a "drug problem."

¶7.	The jury found Moore guilty of all counts. The court sentenced Moore to serve eight years in the custody of the Department of Corrections for Count I and a concurrent term of five years in custody for Count II. For Count III, the court imposed a consecutive five-year suspended sentence with five years of post-release supervision.

3

¶8.     Moore's trial counsel did not file a motion for a new trial or judgment notwithstanding the verdict.  On appeal, Moore was initially represented by the Indigent Appeals Division of the Office of State Public Defender.  Her appellate counsel filed a brief pursuant to *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005), representing that she could identify no arguable issues for appeal.  This Court then granted Moore three extensions of time to file a pro se supplemental brief.  Retained appellate counsel then entered an appearance for Moore and requested an additional extension of time, which we also granted.  Moore's new counsel then filed a brief arguing that the evidence was insufficient to support Moore's convictions.

**ANALYSIS**

¶9.     We review challenges to the sufficiency of the evidence de novo.[1]  *Sanford v. State*, 247 So. 3d 1242, 1244 (¶10) (Miss. 2018).  "We view the evidence in the light most favorable to the prosecution to determine whether rational, reasonable fair-minded jurors *could have found* that the State proved each essential element of the crime."  *Poole v. State*, 46 So. 3d 290, 293 (¶20) (Miss. 2010) (quotation marks and brackets omitted).  "[A]ll credible evidence supporting a defendant's guilt should be accepted as true, and all favorable inferences drawn from the evidence must be reconciled in the prosecution's favor."  *Johnson v. State*, 904 So. 2d 162, 166 (¶7) (Miss. 2005).  "We are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the elements."  *Poole*, 46 So. 3d at 293-94 (¶20).  "Rather, we must affirm the conviction as long as there is sufficient evidence for a rational juror to find that the State proved all elements of the

---

[1] At trial, Moore moved for a directed verdict at the close of the State's case-in-chief and renewed her motion and requested a peremptory instruction at the close of the evidence.

4

offense." *Williamson v. State*, 375 So. 3d 1158, 1167 (¶19) (Miss. Ct. App. 2023) (citing *Poole*, 46 So. 3d at 293-94 (¶20)).

## I. Heroin

¶10. Count I of Moore's indictment alleged that she trafficked "a controlled substance by having in her possession or under her conscious control" heroin "in the amount of 40 dosage units or more," in violation of Mississippi Code Annotated section 41-29-139(f)(2)(C) (Rev. 2018). Moore now asserts that she must be acquitted of trafficking heroin because the crime lab report "did not contain an expert opinion consistent with the legal standard to be considered by the jury" and because "there was no evidence that 40 of the 43 dosage units were even tested."

¶11. Prior to trial, Moore expressly stipulated to the admission of the report from the Forensics Laboratory, and Moore did not object to any of Roberts's or Kennedy's testimony regarding what the forensic testing revealed. Moore cannot now complain that the report was lacking. "If a defendant fails to timely object to an issue at trial, the issue is waived for purposes of appeal. The trial court will not be held in error on a matter that was never presented for its consideration." *Keys v. State*, 33 So. 3d 1143, 1149-50 (¶22) (Miss. Ct. App. 2009) (citation and quotation marks omitted) (quoting *Bogan v. State*, 754 So. 2d 1289, 1294 (¶19) (Miss. Ct. App. 2000)).

¶12. In her reply brief, Moore concedes that "there were no specific objections to the lack of expert opinion or the sufficiency of the testing procedures and sampling techniques." However, she asks this Court to review for plain error. "Plain-error review is properly

utilized for correcting *obvious* instances of injustice or misapplied law." *Green v. State*, 183 So. 3d 28, 31 (¶6) (Miss. 2016) (quotation marks omitted). Therefore, "in order to determine if plain error has occurred, we must determine if the trial court has deviated from a legal rule" and "whether that error is plain, clear, or obvious." *Id.* (brackets and quotation marks omitted). Moore cannot show that any plain error occurred. There is no "legal rule" that precludes a party from stipulating to the admissibility of a drug analysis report.

¶13. Additionally, Moore's argument is barred by the invited error doctrine. Prior to trial, the district attorney informed the trial court that "the parties ha[d] stipulated to the crime lab [report] so [there would not be] a crime lab witness." Defense counsel then expressly confirmed that Moore stipulated to the admission of the report. Under these circumstances, the issue is not just waived but procedurally barred by the "invited error doctrine." *E.g.*, *Wells v. State*, 396 So. 3d 1084, 1086 (¶9) (Miss. 2024) (holding that the defendant's challenge to the sufficiency of counsel's oral stipulation was procedurally barred by the "invited error doctrine" because the defendant "made the tactical decision to enter into the stipulation of his own volition and did not object to or challenge the stipulation before the trial court"). "It is axiomatic that a defendant cannot complain on appeal of alleged errors invited or induced by himself." *Thomas v. State*, 249 So. 3d 331, 347 (¶55) (Miss. 2018) (quotation marks omitted).

¶14. Moore correctly notes that the crime lab report states that only three of the 43 dosage units of heroin were tested. However, this Court has held that "a forensic chemist is generally not required to test all of the suspected narcotic substance to opine that the

6

recovered substance as a whole contains narcotics." *O'Kelly v. State*, 267 So. 3d 282, 290 (¶27) (Miss. Ct. App. 2018) (quotation marks omitted) (quoting *Fay v. State*, 133 So. 3d 841, 844-45 (¶¶7-11) (Miss. Ct. App. 2013)). "Rather, random testing is permissible when the seized samples are sufficiently homogeneous so that one may infer beyond a reasonable doubt that the untested samples contain the same substance as those that are conclusively tested." *Id.* (quotation marks omitted) (quoting *Fay*, 133 So. 3d at 845 (¶9)).

¶15.   We have rejected similar arguments in prior cases, including *Fay* and *O'Kelly*. In *Fay*, the defendant asserted that there was insufficient evidence to convict him of possessing the charged weight of methadone because only one of several pill fragments was tested. *Fay*, 133 So. 3d at 844 (¶8). We held that the evidence was sufficient for the jury to find that the pill fragments were all methadone "[b]ased on the relatively homogeneous nature of the pill fragments." *Id.* at 845 (¶11). Similarly, the defendant in *O'Kelly* argued "that the State failed to prove that he possessed a sufficient quantity of NBOMe because the State tested only eight of the approximately 425 perforated squares found." *O'Kelly*, 267 So. 3d at 289 (¶26). We held that the evidence was sufficient to support O'Kelly's conviction because there was "nothing in the record to suggest that the approximately 417 squares not tested were different in kind from the eight that were tested." *Id.* at 290 (¶28); *accord, e.g.*, *Alford v. State*, 367 So. 3d 1013, 1020-21 (¶¶26-31) (Miss. Ct. App. 2023).

¶16.   The same reasoning applies here. The 43 pills at issue were all found in the same glass vial in Moore's purse. Deputy Kennedy described them at trial as pink and clear pharmaceutical capsules containing a substance (later determined to be heroin). There is

nothing in the record to suggest that the pills were not homogeneous. Therefore, the evidence presented was sufficient for a rational juror to find beyond a reasonable doubt that Moore possessed forty or more dosage units of heroin.

## II. Methamphetamine

¶17. Count II of Moore's indictment alleged that she possessed methamphetamine "in an amount of 20 dosage units or more, but less than 40 dosage units," in violation of Mississippi Code Annotated section 41-29-139(c)(1)(D) (Rev. 2018). Moore similarly argues that her conviction for possession of methamphetamine must be reversed because the forensic examiner tested only three of 28 dosage units.

¶18. This argument fails for the same reasons discussed just above. Kennedy testified that he found these pills in a clear plastic bag inside Moore's purse. There is nothing in the record to suggest that the 28 pills were not homogeneous. Accordingly, there was sufficient evidence for a rational juror to find beyond a reasonable doubt that Moore possessed at least 20 dosage units of methamphetamine.

## III. Phencyclidine (PCP)

¶19. Count III of Moore's indictment alleged that she possessed PCP "in an amount of 10 dosage units or more, but less than 20 dosage units," in violation of Mississippi Code Annotated section 41-29-139(c)(1)(C) (Rev. 2018). Moore argues that the proof at trial showed that the PCP "was in a liquid form" and that "there was never a motion filed by the State to amend the indictment to conform to the evidence." Therefore, Moore argues, the evidence "demonstrated that she never had any dosage units of the controlled substance."

¶20. Moore is correct that the evidence showed that the PCP in her car was in liquid form in the amount of 13 milliliters. Section 41-29-139(c) states that a "[d]osage unit . . . means a tablet or capsule, *or in the case of a liquid solution, one (1) milliliter*." (Emphasis added). Further, a jury instruction informed the jury that a "dosage unit . . . means in the case of a liquid solution, one (1) milliliter." Accordingly, Moore was properly indicted and convicted for possessing ten or more dosage units of PCP.

¶21. For the reasons discussed above, Moore's convictions and sentences are **AFFIRMED**.

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**