# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00935-COA

**HAROLD LEWIS ANDERSON A/K/A HAROLD ANDERSON**        **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/11/2024 |
| TRIAL JUDGE: | HON. MARK SHELDON DUNCAN |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | STEVEN SIMEON KILGORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/03/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND LASSITTER ST. PÉ, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1. A Scott County Circuit Court jury convicted Harold Anderson of being a felon in possession of a firearm. The trial court sentenced Anderson to serve ten years in the custody of the Mississippi Department of Corrections (MDOC) as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2020). Anderson moved for a new trial, which the trial court denied. Anderson appeals, asserting that (1) the State failed to present sufficient evidence to convict Anderson of being a felon in possession of a firearm; and (2) the verdict was against the overwhelming weight of the evidence. For the reasons addressed below, we are unconvinced by Anderson's assertions. Accordingly, we affirm Anderson's

conviction and sentence.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2. Anderson was indicted as a habitual offender for possession of a weapon by a felon. *See* Miss. Code Ann. § 97-37-5 (Rev. 2020); Miss. Code Ann. § 99-19-81. The circumstances surrounding this charge occurred during the early morning hours on Easter Sunday, April 9, 2023, at a home in Hillsboro, Mississippi. Chasity Hunt, also known as Sweet Pea, and Michael McCarty rented the home. Hunt and McCarty, as well as Hunter Wolfe, a deputy with the Scott County Sheriff's Department, testified for the State at Anderson's June 18, 2024 trial. Anderson testified on his own behalf. The defense presented no other witnesses.

¶3. Hunt testified that she and McCarty were living together in the Hillsboro home at the time of these events. Anderson had also lived there for a period, but he had moved out. According to Hunt, she had been in a romantic relationship with Anderson that was ending around this time. She and McCarty were friends, and she was taking care of him following his leg amputation. Hunt testified that Anderson arrived at the house around 4:00 a.m. on April 9, 2023. She was in the master bedroom in the back of the house giving McCarty his medications when Anderson came into the room. Anderson was "already intoxicated" and "agitated like somebody had done made him mad."

¶4. Hunt testified that when Anderson came into the bedroom, he had "a sawed[-]off shotgun" that was wrapped in something "like a black shirt." At some point while he was in the bedroom, he pulled the shotgun out so that she could see it. Hunt testified that she had

2

previously lived with Anderson for about two months and had seen the same shotgun before at Anderson's house. She said that Anderson kept the gun in his car. He told her he used it for hunting.

¶5.    Hunt testified that Anderson began "fussing" at McCarty and tried to hit him. At that point, another man in the house tried to get Anderson to calm down, which caused Anderson to leave the bedroom and begin "fussing with him [(the other man)]." Someone eventually called 911, and the police arrived at the house. Hunt saw Anderson hide the shotgun in the bathroom, "but [she] did not know where in the bathroom."

¶6.    McCarty testified that Anderson came to his house about 3:30 or 4:00 a.m. on that Sunday morning. Anderson was "tipsy" and drinking from a half pint of whiskey. McCarty saw Anderson with the shotgun "when he [(Anderson)] put it in the bathroom." According to McCarty, Anderson said, "[T]hey out there," meaning the police, and then Anderson put the shotgun in the bathroom. McCarty had not seen the shotgun before that day. He confirmed that the shotgun did not belong to him and that it was not stored at his house. Unlike Hunt, McCarty denied that there was any altercation between him and Anderson.

¶7.    Deputy Wolfe testified that he and three other officers arrived at the house in response to a 911 call reporting "a possible disturbance involving a female with a weapon." When Deputy Wolfe arrived at the house, Anderson "was located in the back of the residence . . . , but he came to the front of the residence . . . when the female came outside." Deputy Wolfe was shown the shotgun (Exhibit 1) and confirmed that he recognized it. He testified that the shotgun "was found in a back room or the bathroom . . . off of the hallway from where Mr.

3

Anderson came out of." Deputy Wolfe and another deputy "retrieved [the shotgun] from[–]I think it was the bathroom part of the house . . . ." Deputy Wolfe identified the shotgun as a "Model SB [(single-barrel)] 12[-]gauge [three-inch] modified [shotgun]." When the shotgun was retrieved that morning, "[i]t had one shell in the barrel."

¶8. The State rested. The defense unsuccessfully moved for a directed verdict.[1]

¶9. Anderson testified in his own defense. He denied owning or ever seeing the shotgun—or owning any gun at all. Anderson denied that he had any altercation or argument with McCarty. Rather, according to Anderson, he went to the house that morning "to pick up Sweet Pea." Anderson testified that there were three or four people at the house when he arrived and that at least three of them were felons. Additionally, Anderson admitted during cross-examination that he had been convicted of a felony and that he knew he was not supposed to possess a firearm.

¶10. The defense rested, and the State finally rested.

¶11. After deliberation, the jury returned a unanimous verdict finding Anderson guilty as charged. The trial court sentenced Anderson as set forth above, and Anderson unsuccessfully moved for judgment notwithstanding the verdict or a new trial.

¶12. Anderson appeals, challenging the sufficiency and weight of the evidence.

---

[1] At the close of its case-in-chief, the State made an ore tenus motion to amend the indictment that had initially charged Anderson with possession of one of two firearms: the shotgun or a "RG .22 Revolver." Because no evidence was presented that Anderson had possessed the .22-caliber revolver, the State moved to amend the indictment to remove reference to that weapon. The motion was granted without objection.

4

**DISCUSSION**[2]

### I.      Sufficiency of the Evidence

¶13.    Anderson asserts that the State did not present sufficient evidence to convict him of being a felon in possession of a firearm. We disagree for the reasons set forth below.

¶14.    "When reviewing a challenge to the sufficiency of the evidence, we apply a de novo standard of review." *Wakefield v. State*, 405 So. 3d 95, 108 (¶47) (Miss. Ct. App. 2023), *aff'd*, 383 So. 3d 287 (Miss. 2024). In this regard, we must review "the evidence in a light most favorable to the State to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 108-09 (¶47) (quoting *Thames v. State*, 310 So. 3d 1163, 1174 (¶53) (Miss. 2021)). "This Court will reverse and render only when the facts point so overwhelmingly in favor of the defendant that reasonable men could not have found, beyond a reasonable doubt, the defendant was guilty." *Brooks v. State*, 402 So. 3d 787, 790 (¶8) (Miss. Ct. App. 2025). "We are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the [requisite] elements. Rather, we must decide whether a reasonable juror could rationally say that the State did." *Walker v. State*, 385 So. 3d 457, 463 (¶18) (Miss. Ct. App. 2023) (quoting *Poole v. State*, 46 So. 3d 290, 293-94 (¶20) (Miss. 2010)).

¶15.    "To prove possession of a firearm by a convicted felon, the State must prove two things: (1) the person was in possession of a firearm, and (2) the person had been convicted of a felony crime." *Taylor v. State*, 367 So. 3d 228, 241 (¶44) (Miss. Ct. App. 2020) (quoting

---

[2] The applicable standards of review are discussed in context.

*Toliver v. State*, 271 So. 3d 513, 516 (¶9) (Miss. Ct. App. 2018)), *aff'd*, 330 So. 3d 758 (Miss. 2021); *see* Miss. Code Ann. § 97-37-5(1) ("It shall be unlawful for any person who has been convicted of a felony under the laws of this state, any other state, or of the United States to possess any firearm . . . unless such person has received a pardon for such felony. . . ."). "Possession of a firearm can be actual or constructive." *Johnson v. State*, 329 So. 3d 1219, 1224 (¶16) (Miss. Ct. App. 2021). "Constructive possession allows the State to establish possession when evidence of actual possession is absent." *Id.*

¶16.    Here, the State presented direct proof of actual possession through the testimonies of Hunt and McCarty. We addressed a very similar situation in *Smith*, where, like Anderson, Smith asserted that the State had presented insufficient evidence that he possessed a shotgun to sustain his felon-in-possession-of-a-firearm conviction. *Smith v. State*, 180 So. 3d 771, 773-74 (¶12) (Miss. Ct. App. 2015). In that case, two witnesses "testified that they saw Smith in actual possession of the shotgun. Admittedly, [the two witnesses] differed in some aspects of their testimonies, but both testified that at some point they saw Smith in possession of the shotgun." *Id.* at 775 (¶16). On these facts, we rejected Smith's sufficiency-of-the-evidence argument, finding, instead, that "the State presented credible evidence to show, beyond a reasonable doubt, that Smith had actual possession of the shotgun at issue." *Id.*

¶17.    Like the two witnesses in *Smith*, Hunt and McCarty in this case both testified that they saw Anderson in actual possession of the shotgun. We recognize that these two witnesses differed in some aspects of their testimonies, as Anderson points out. Regarding proof of actual possession, however, the relevant point is that both witnesses testified that at some

point that morning, they saw Anderson in possession of the shotgun. Hunt testified that Anderson came into the back master bedroom with the shotgun wrapped in something like a black shirt, he uncovered the shotgun so that she could see it, and later she saw Anderson hide the shotgun in the bathroom located in the back of the house. She identified the shotgun at trial and testified that she had seen it before at Anderson's home. Anderson told her that he used it for hunting.

¶18. McCarty likewise testified that he saw the shotgun "when [Anderson] put it in the bathroom." He also confirmed that he (McCarty) did not own the shotgun and had never seen it in his house.

¶19. As we did in *Smith*, we find here that Hunt and McCarty's testimonies constituted "credible evidence to show, beyond a reasonable doubt, that [Anderson] had actual possession of the shotgun at issue." *Id.* As such, we find that "[a] reasonable juror could find beyond a reasonable doubt that [Anderson] was guilty of possession of a firearm by a convicted felon." *Id.*

¶20. Indeed, in this case, the State also presented the corroborating testimony of Deputy Wolfe, who testified that he and another officer recovered the shotgun from "a back room or the bathroom . . . off of the hallway from where Mr. Anderson came out of." Anderson questioned Deputy Wolfe's testimony because at one point during his direct examination, he could not definitively name the exact room where the weapon was found. Deputy Wolfe, however, later clarified that he thought they retrieved the "weapon from . . . the bathroom part of the house." In any event, even if Deputy Wolfe was slightly confused over the house

layout, that factor goes to a weight-of-the-evidence argument. "It is the role—and the responsibility—of the jury to weigh witness testimony and determine its credibility." *Toliver*, 271 So. 3d at 517 (¶14) (internal quotation mark omitted). This Court "[does] not make independent resolutions of conflicting evidence. Nor do we reweigh the evidence or make witness-credibility determinations. Instead, when the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony." *Little v. State*, 233 So. 3d 288, 292 (¶20) (Miss. 2017) (citation and internal quotation mark omitted).

¶21. Similarly, although Anderson testified in his own defense and denied owning or even ever seeing the shotgun, it is the jury's role to weigh all the testimony and evidence before it and assess its credibility. *Toliver*, 271 So. 3d at 517 (¶14). In short, "[j]uries are chosen for the purpose of resolving questions of fact, and this Court will not substitute our factual findings for that of the jury in a contest of credibility." *Id.* (internal quotation marks omitted).

¶22. For all the reasons discussed above, "[v]iewing the evidence in the light most favorable to the prosecution," we find that reasonable jurors could have found beyond a reasonable doubt that Anderson possessed the shotgun. *Id.* Accordingly, we find that Anderson's sufficiency-of-the-evidence assignment of error is without merit.

## II.    Overwhelming Weight of the Evidence

¶23. Incorporating the same factual analysis he used in his sufficiency-of-the-evidence challenge, Anderson also asserts that the verdict was against the overwhelming weight of the

evidence. For essentially the same reasons addressed above, we are unpersuaded by Anderson's assertions.

¶24. "[We] apply an abuse-of-discretion standard of review when determining the propriety of a trial court's decision to deny a motion for a new trial." *Mayfield v. State*, 422 So. 3d 956, 960 (¶10) (Miss. 2025). "When reviewing challenges to the weight of the evidence, [we] view[] the evidence in the light most favorable to the verdict." *Moore v. State*, 348 So. 3d 322, 327 (¶18) (Miss. 2022) (internal quotation marks omitted). Only where "the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable justice" will this Court "disturb a jury verdict on a weight-of-the-evidence challenge." *Id.* (internal quotation marks omitted). In addressing such a challenge, "we afford the State the benefit of all favorable inferences that may reasonably be drawn from the evidence." *Coleman v. State*, 411 So. 3d 137, 145 (¶31) (Miss. 2025) (internal quotation marks omitted). "The standard for reversing a jury's verdict as against the overwhelming weight of the evidence is very high." *Id.* (internal quotation mark omitted).

¶25. In this case, as we addressed above, Hunt testified that Anderson brought the shotgun into the house, and both Hunt and McCarty testified that they later saw Anderson hide the shotgun in the back bathroom when the police arrived. Hunt further testified that she had seen the same shotgun at Anderson's home. Deputy Wolfe confirmed that the shotgun was found in a back room or bathroom in the house, and he later clarified that he believed it was located in the bathroom.

9

¶26. As he did with respect to Issue I, Anderson points out the inconsistencies in these witnesses' testimonies—while ignoring the relevant point that both Hunt and McCarty saw Anderson in possession of the shotgun. Anderson also argues that there were other felons present in the house, including McCarty, who had "an incentive to make sure that it was Anderson who took the blame for possessing the shotgun."

¶27. Anderson's assertions, at bottom, raise issues regarding the credibility of the witnesses. But, as stated, "where the verdict turns on the credibility of conflicting testimony and the credibility of the witnesses, it is the jury's duty to resolve the conflict." *Coleman*, 411 So. 3d at 145 (¶33) (internal quotation marks omitted). Here, both the State and the defense presented their theory of the case to the jury, and the jury "[was] free to accept or reject all or some of the testimony given by each witness." *Id.* at 146 (¶34). We will neither "reweigh the evidence" nor "make independent resolutions of conflicting evidence," as that is the jury's exclusive domain. *Little*, 233 So. 3d at 292 (¶20). "[V]iew[ing] the evidence in the light most favorable to the verdict," *Moore*, 348 So. 3d at 327 (¶18), as we must, we find that the jury's verdict is not against the overwhelming weight of the evidence. We further find that affirming Anderson's conviction would not sanction an unconscionable justice. Therefore, we find that Anderson's weight-of-the-evidence assignment of error is without merit.

## CONCLUSION

¶28. This Court finds that the State presented sufficient evidence to support Anderson's felon-in-possession-of-a-firearm conviction and that the jury's verdict was not against the

10

overwhelming weight of the evidence.  Accordingly, we affirm Anderson's conviction and sentence.

¶29.    **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**